150 So.2d 756

**QUEEN CITY FURNITURE COMPANY et al.**

**v.**

**Adelaide C. HINDS.**

7 Div. 569.

Supreme Court of Alabama.

Feb. 28, 1963.

Huie, Fernambucq & Stewart, Birmingham, for appellants.

**586**

Lusk, Swann & Burns, Gadsden, for appellee.

HARWOOD, Justice.

This is a petition for certiorari to review a judgment of the Hon. A. B. Cunningham, Judge of the Circuit Court of Etowah County, awarding the plaintiff workmen's compensation benefits as the widow of John Z. Hinds, Jr., and on behalf of the two minor children of Mr. and Mrs. Hinds. Mr. Hinds was involved in an automobile collision on 25 January 1960, and died of the injuries received in said accident on 28 January 1960.

The evidence tends to show that for a long number of years Mr. Hinds had owned the majority of the stock in the Queen City Furniture Company, a furniture manufacturing company. Mr. Hinds was also president of the company. Since a fire in 1957, the company had been in a precarious financial condition. Although president of the company, Mr. Hinds was also in charge of sales and did the collecting for the company, and in fact "he did generally any of the work that might be necessary, from loading trucks on up to upholstering."

The Star Fac Furniture Company of Gadsden, owed to Queen City Furniture Company, a balance on furniture purchased from Queen City, and Mr. Hinds had spoken to Mr. Jack Butler of Star Fac relative to a payment on the account.

For some time the records of the Queen City Furniture Company had been kept at the home of Mr. and Mrs. Hinds, and the telephone at the Queen City plant had been disconnected. All of the clerical record work of Queen City was conducted from

the Hinds' home, and all business calls of the company were to and from the home.

On the evening of 25 January 1960, Mr. and Mrs. Hinds were engaged in working on company business in their home. Mrs. Hinds was working on fabrics, and Mr. Hinds was telephoning customers and working on clerical records of Queen City.

About seven or seven thirty P.M., Mr. and Mrs. Newlin, and their children came in. Mrs. Hinds and Mrs. Newlin, and the children went to the kitchen, and Mr. Hinds and Mr. Newlin remained in the living room. Mr. Newlin had been a customer of Queen City.

Mrs. Hinds was in the kitchen for about 20 minutes of the 30 minute visit of the Newlins. She testified she did not see Mr. Hinds take a drink, but she thought he had a drink during the Newlin visit, though he was "not intoxicated or anything like that."

After the Newlins left, Mr. and Mrs. Hinds returned to their work. About nine o'clock Mr. Butler, of Star Fac called on the phone and stated he had some money to pay on the Queen City account. At this time Mr. Hinds was preparing some bills to be sent to Queen City customers. He completed these, and then departed saying he was going to Star Fac and collect the money and would also mail the bills. Mrs. Hinds testified that Mr. Hinds left their home at about 9:15 P.M. Reference to a map of Gadsden introduced in evidence shows that the Hinds' home was some 30 blocks or more from the Star Fac location.

When Mr. Hinds arrived at Star Fac, Mr. Jack Butler and Mr. George Graves were there. According to Mr. Butler, Mr. Hinds arrived at the Star Fac at around 9 P.M., "somewhere along in there." They sat and talked business for maybe an hour. During this time Mr. Hinds had a drink of whiskey with Mr. Butler. Also, Mr. Butler gave to Mr. Hinds $100.00 in cash, and a check for $100.00, as payment on Star Fac's account. Mr. Hinds put the cash in his wallet and placed the check in his shirt pocket.

Eventually the meeting broke up, and all three men went to their automobiles parked at Star Fac. While Mr. Butler had previously stated that Mr. Hinds arrived at Star Fac "around nine o'clock, somewhere in there" and had stayed for approximately an hour, and all three men had left at the same time, he later testified: "I didn't say he left at ten. I don't know what time he left." According to Mr. Butler, Mr. Hinds was not intoxicated while at Star Fac, and he did not hear Mr. Graves offer to drive Mr. Hinds home. The last he saw of Mr. Hinds, he was heading toward his home, and was preparing to enter Meighan Boulevard.

Mr. Graves testified that Mr. Hinds arrived at Star Fac possibly somewhere around nine o'clock, "As I recall we were ready to close, and maybe we just waited a few minutes for him." They stayed at Star Fac "quite some time. Possibly an hour." During this time he poured Mr. Hinds a drink, but he spilled it on his jacket, and he did not see him have another drink. He and Mr. Butler were drinking however, and Graves said he had two or three drinks.

When Mr. Hinds went to leave Star Fac he almost drove his car against a guide post and Graves offered to drive him home. Mr. Hinds replied that his Packard knew the way home.

As to Mr. Hinds' condition at Star Fac, Mr. Graves said it appeared he possibly had been drinking a little bit.

Mr. Hinds drove away from Star Fac first, Mr. Butler next, and Mr. Graves followed. The last Graves saw of Mr. Hinds he was "headed across the viaduct on Meighan Boulevard." Mr. Hinds had told Mr. Graves he was going to the post office either to mail something or to pick up mail.

Later Mr. Hinds, while driving west on the one way east lane of Meighan Boulevard, collided head-on with a car driven by

Mr. Hoyt B. Parr. As a result of injuries sustained in this collision, Mr. Hinds died three days later.

Mr. Parr testified that the accident occurred at 11:30 P.M.

Mr. J. E. Bone, a police officer, testified he arrived at the scene of the accident at 11:30 P.M. The accident had of course occurred prior to Mr. Bone's arrival.

Mr. G. W. Leach testified that he was the local agent for the Old Colony Insurance Corporation, and such company carried the workmen's compensation insurance on the Queen City Furniture Company. Mr. Hinds was included in the premium collected as a salesman and collector.

Upon being notified of the accident Mrs. Hinds went to the hospital. There she conversed with Mr. Hinds and learned of the Star Fac check in his shirt pocket, which she removed from the pocket.

Mrs. Hinds further testified that she acted as secretary of the Queen City Furniture Company, and that Mr. Hinds, at the time of the accident, received a salary of $110.00 per week. The amount of his salary had varied with the financial condition of the company, having been as high as $150.00 per week, and as low as $100.00 per week.

Appellant's various assignments of error raise three points for review.

1. That the deceased's injuries did not arise out of, or in the course of, his employment.

2. That the deceased was not an employee of Queen City Furniture Company, but was an executive thereof.

3. That deceased's injuries were a result of his intoxication.

Each of the above mentioned issues were found adversely to the appellant by the court below.

1. As stated in Wooten v. Roden, 260 Ala. 606, 71 So.2d 802:

"The words 'arising out of' involve the idea of causal relationship between the employment and the injury, while the term 'in the course of' relates more particularly to the time, place and circumstances under which the injury occurred. The phrases are not synonymous; where both are used conjunctively a double condition has been imposed, and both terms must be satisfied in order to bring a case within the act. 58 Am.Jur. 717. Generally, an injury arises out of an employment only when there is a causal connection between the injury and the conditions under which the work is required to be performed.

\*     \*     \*     \*     \*     \*

" 'The injury contemplated by the act must have had its origin in some risk of employment. It must arise out of and in the course of the employment or be incident thereto. \* \* \* A risk is incident to the employment when it belongs to or is connected with duties a workman has to perform under his contract of service.' "

The accident occurred on Meighan Boulevard, which all witnesses agree was the route the deceased would have taken to reach his home, though some three or four blocks eastward from where the deceased could have gotten on the boulevard. The record is silent as to whether he could have immediately turned west on Meighan Boulevard upon entering it. Regardless, this minor geographical deviation in the route is of little consequence, since the evidence shows that the deceased was travelling west on the boulevard, toward his home and office at the time of the accident.

Counsel for appellant stress that an hour and a half must have elapsed between the time deceased left Star Fac and the time of the collision. Actually the time that deceased left Star Fac as shown by evidence that is equivocal at best. Mrs. Hinds testified her husband left their house at 9:15 P.M. According to the map of Gadsden, he

had to drive some 30 or more. blocks to reach Star Fac. The time he left Star Fac is not shown to any degree of certainty. While both Mr. Butler and Mr. Graves testified to the effect that Mr. Hinds remained at Star Fac for some time, possibly an hour, conversing about business, Mr. Butler testified he would not say he left at ten, "I don't know what time he left."

The lapse of time between the time Mr. Hinds actually left Star Fac, and the actual time of the collision is to some degree conjectural under the evidence. This in itself would support the lower court's finding that Mr. Hinds' injuries arose out of and were in the course of his employment.

Further, the only thing that could be deduced from the lapse of time, if any, and the location of the collision some three or four blocks towards the east on Meighan Boulevard, was that Mr. Hinds may have been on some personal enterprise at the time of his accident.

Mr. Hinds was salesman and also collector for the Queen City Furniture Company. His hours of work were irregular, and certainly no route to or from Star Fac was prescribed by the nature of his undertaking. At the time of the collision he was driving west toward his home. At this time he was on the street for the sole benefit of Queen City Furniture Company. Had Mr. Hinds deviated from the business of his employer to go on a personal errand, and such assumption is speculative, such personal enterprise had ended at the time of the collision, and he was enroute back to his home and office of the Queen City Furniture Company, taking with him monies he had collected. Under such circumstances the trial court was fully justified in its finding that Mr. Hinds' injuries arose out of and were in the course of his employment. A large number of decisions supportive of the correctness of such conclusions may be found in 76 A.L.R. at pp. 357 through 362, and we will not here set them forth.

■ 2. It is true that Mr. Hinds was president of, and principal stockholder, in the Queen City Furniture Company. However, it is clear from the record that his executive duties were secondary to his work as an employee in and about the company's business.

The governing principle in such a situation is well stated in Larson's Workmen's Compensation Law, Vol. 1, Sec. 54.21, as follows:

"It is quite common, however, especially in small corporations whose demands upon their officers take only a small fraction of their time, to find that the officers, also, discharge time which, if performed by anyone else, would unquestionably confer employee status. In such cases, when the normal incidence of employment attends the performance of the non-executive work, it is uniformly held that the compensation act applies."

While we have found no Alabama case enunciating the doctrine set forth in the quoted text above, the following cases from our sister jurisdictions are supportive thereof: Wolfe v. Wolfe, 154 Fla. 633, 18 So.2d 535; Badon Refrigeration Co. v. Badon, 231 Miss. 113, 95 So.2d 114; Goldman v. Johanna Farms, 26 N.J.Super. 550, 98 A.2d 142; Hirsch v. Hirsch Bros., 97 N.H. 480, 92 A.2d 402; Alsup et al. v. Murfreesboro, Bread and Ice Cream Co., 165 Tenn. 591, 56 S.W.2d 746; Mine Service Co. v. Greene, (Ky.), 265 S.W.2d 944; Fruit Boat Market Co. v. Industrial Commission, 264 Wis. 304, 58 N.W.2d 689. See also annotations in 15 A.L.R., p. 1288, and 81 A.L.R. p. 644

■ 3. The appellant's contention that Hinds' injury was the result of his own intoxication was a defensive matter, and the burden of establishing such fact was upon the appellant.

■ The evidence shows only that Hinds probably had a drink at his home with Mr. Newlin between 7:00 and 7:30 P.M., and that he had another drink at the Star Fac store during his visit there. Mrs. Hinds and Mr. Butler stated unequivocally that

Mr. Hinds was not intoxicated. Mr. Graves testified that from his appearance at Star Fac Mr. Hinds may possibly have been drinking a little bit. Although Mr. Graves offered to drive Mr. Hinds home, he testified repeatedly he would not say he was intoxicated.

The legal principles governing the question now considered are stated in Horovitz, supported by authorities, as follows (Horovitz on Workmen's Compensation, p. 120):

"There must first be proof of actual intoxication. Such a state is not necessarily proved by evidence that the employee had been drinking, or had a strong odor of liquor on his breath, or in his vomitus, or that his automobile zigzagged. In each case it is a question of fact on all the evidence, and finding of the board or commission, if rationally possible, stands."

The trial court found that Mr. Hinds' injuries were not the result of his own intoxication. No basis for disturbing this finding is presented by the evidence adduced.

As before stated, the court below found that the injuries sustained by Mr. Hinds, and from which death ensued, arose out of and were in the course of his employment; that Mr. Hinds at the time of his injuries was an employee of the Queen City Furniture Company; and that the injuries were not the result of deceased's intoxication.

The rule has long been settled that on certiorari to review judgments in compensation cases, this court does not look to the weight of the evidence as to facts found by the trier of fact, and will only determine if there is any evidence, or reasonable inference therefrom, to support the finding. Simmons v. F. W. Dodge Corp., 270 Ala. 616, 120 So.2d 921, and cases therein cited.

After examination of this record, it is our conclusion that there is evidence, or reasonable inferences therefrom supporting each and every finding of fact by the court be-low. The judgment is therefore due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.