**MISSION INSURANCE COMPANY, Plaintiff,**

v.

**Gary BARNETT, Albert Nelson, M. C. Hamilton, Joe Ernest, Perry Fendley, Douglas Parden, John Bradford, Dwight Harrigan, Tom O'Melia, and Wendell DeWayne Bedwell, Defendants.**

**Civ. A. No. 78–611–H.**

United States District Court, S. D. Alabama, S. D.

Sept. 11, 1979.

Larry U. Sims, Champ Lyons, Jr., Mobile, Ala., for Mission Ins.

Irvin J. Langford, Mobile, Ala., Gilmore & Keahey, Grove Hill, Ala., M. A. Marsal, Mobile, Ala., for Wendell DeWayne Bedwell cross-claim defendant.

Joseph C. Sullivan, Jr., Butler & Sullivan, Mobile, Ala., Warren B. Lightfoot and Robert K. Spotswood, Birmingham, Ala., for Gary Barnett, Albert Nelson, M. C. Hamilton, Joe Ernest, Perry Fendley, Douglas Parden, John Bradford, Dwight Harrigan and Tom O'Melia.

John N. Leach, Jr., Mobile, Ala., for U. S. Fire Ins. Co.

Robert H. Smith, Mobile, Ala., for Ins. Co. of North America.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAND, District Judge.

#### I. Introduction

This declaratory judgment action was filed by Mission Insurance Company ("Mission") to determine whether it has the duty to defend and provide coverage for the defendants in *Wendell DeWayne Bedwell v. Tom O'Melia, et al.,* a state court proceeding filed in the Circuit Court for Clarke County, Alabama. In response to Mission's complaint all defendants except Bedwell (hereinafter "defendants") filed an answer and counterclaim. In their answer, defendants contend that Mission is obligated to provide them coverage and a defense.

In their counterclaim, defendants added as plaintiffs herein three additional insurers, Insurance Company of North America ("INA"), Jefferson Insurance Company of New York ("Jefferson"), and United States Fire Insurance Company ("U.S. Fire"), and added as a defendant herein Thomas H. O'Melia, Jr. Defendants seek a declaratory judgment that the plaintiff insurers are obligated to defend them and pay any judgment against them in Bedwell's Clarke County lawsuit.

Mission has filed a motion for summary judgment contending that a certain exclusion contained in its insurance policy relieves it of the obligation to provide the defendants coverage and a defense as to Bedwell's claim. Defendants have filed a response to Mission's motion and a motion for summary judgment against the four plaintiff insurers. Counterclaim-defendants INA and Jefferson have both filed motions for summary judgment.[1]

Based upon the briefs, the oral argument, the affidavits and other evidence submitted by counsel, and the applicable law, the following Findings of Fact and Conclusions of Law are entered in this action pursuant to Fed.R.Civ.P. 54(b).

#### II. Findings of Fact

1. On April 27, 1977, Wendell DeWayne Bedwell ("Bedwell"), an employee of Scotch Lumber Company ("Scotch"), was injured on the premises of Scotch. On May 16, 1978, Bedwell filed a complaint in the Circuit Court for Clarke County, Alabama against Thomas H. O'Melia, Dwight Harrigan, John Gerald Bradford, Jr., Millard Calvin Hamilton, Cecil Albert Nelson, Douglas Parden, Joseph Bettis Ernest, Jr., William Perry Fendley, and Gary Barnett. Bedwell has amended his complaint by adding to paragraph 2 of the first and second causes of action the name of Thomas H. O'Melia, Jr. as an additional defendant.

---

1. INA and Jefferson both filed motions for summary judgment on July 6, 1979. Mr. Robert Smith, Esq. presented oral argument to the Court at the Court's regular motion docket on July 6th in support of the motions for summary judgment filed by both INA and Jefferson.

The motion to strike supplement to motion for summary judgment by defendants which Mr. Smith filed on August 16, 1979 is granted.

U.S. Fire has adopted all of the responses which Mission has made to the defendants' motion for summary judgment. The U.S. Fire policy provides certain coverage in excess of the coverage provided by Mission's policy. The U.S. Fire policy further provides that its coverage "shall follow the insuring agreements, conditions, and exclusions of the underlying insurance (whether primary or excess) immediately preceding the layer of coverage provided by this certificate, including any change by endorsements." Insuring Agreement of U.S. Fire Insurance Policy at p. 1. Hence, U.S. Fire's liability as to coverage is dependent upon whether coverage is afforded by Mission Insurance Co., which provides the coverage immediately preceding the U.S. Fire coverage.

2. INA Policy Number GAL 34 49 56 was in force on April 27, 1977. Scotch was the "Named Insured" under that policy, and Thomas H. O'Melia, Thomas H. O'Melia, Jr., and Dwight Harrigan were "Persons Insured" under the Comprehensive General Liability Insurance portion of the policy. INA's total liability limit under said policy resulting from one occurrence is $100,-000.00.

3. Jefferson Policy Number JE 65096 was in force on April 27, 1977. Scotch and defendants Thomas H. O'Melia, Sr., Thomas H. O'Melia, Jr., and Dwight Harrigan are "Named Insureds" under that policy. The Jefferson policy provides $300,000.00 of "excess" coverage over and above the $100,-000.00 of primary insurance provided by INA.

4. Mission Umbrella Liability Policy Number M 835421 was in force on April 27, 1977. Thomas H. O'Melia, Sr., Thomas H. O'Melia, Jr., and Dwight Harrigan, along with Scotch Lumber Company, are "Named Assureds" under said policy. Mission's policy provides coverage for the total sum which the "Assured", as defined in the policy, becomes obligated to pay in excess of the $400,000.00 primary insurance provided by INA and Jefferson up to $3,000,000.00 if the "occurrence", as defined in the policy, is covered by the primary insurance policies. If the primary insurance policies do not cover the "occurrence", then Mission is obligated to pay the excess of $10,000.00 up to the sum of $3,000,000.00.

5. U.S. Fire Policy Number XS 3331 was in force on April 27, 1977. Defendants Thomas H. O'Melia, Sr., Thomas H. O'Melia, Jr., and Dwight Harrigan, along with Scotch Lumber Company, are "Named Insureds" under that policy. The U.S. Fire policy provides excess coverage in the amount of $5,000,000.00 for each occurrence where the insureds' liability is in excess of the $3,000,000.00 coverage provided by Mission's Umbrella Policy.

6. Bedwell was injured when logs fell from a trailer located on the premises of Scotch. After studying the state-court complaint it is unclear to the Court precisely what Bedwell is claiming.

7. On the one hand, Bedwell's complaint may be read to allege that the defendants failed to provide safe premises.[2] Specifically, Bedwell may be alleging that the defendants either (a) provided negligent instructions as to how high the logs should be stacked (Bedwell answers to interrogatories numbered 11 and 12), or (b) negligently established a method or procedure for unloading logs, including the use of the Letourneau (Bedwell Interrogatory answers 7, 8, 9, 10, 11 and 12). If this is what the complaint alleges then none of the defendants are charged with a negligent act occurring during the unloading process when Bedwell's injury occurred. The record shows that none of the defendants were present at the situs of Bedwell's accident. *See* exhibits "A" through "J".

8. Alternatively, this Court recognizes that the state-court complaint of Bedwell may simply be alleging negligence in the loading and unloading of the logs from his trailer. The Court specifically finds that Bedwell's complaint may be read either way.

9. On April 27, 1977, defendants Thomas H. O'Melia, Sr., Thomas H. O'Melia, Jr., and Dwight Harrigan were corporate officers, executive officers, and directors of Scotch. Exhibits "A", "B" and "C".

### III. Conclusions of Law

1. The Court has jurisdiction of this action under 28 U.S.C. § 2201 and 28 U.S.C. § 1332.

---

**2.** Bedwell's complaint in the Clarke County action, and his answers to interrogatories 14 and 15 in that action, can be read as alleging that the defendants failed to provide safety equipment in the form of a boom with a chain on the end of it which could be wrapped around logs before the chain holding them onto the truck was released. At pages 35, 36–7, 40, 45, 62–3 of his deposition taken in the Clarke County action, Bedwell further states that this equipment is driven up to the log trailer and is used to clamp the logs. According to Bedwell, this piece of equipment, known as a Letourneau, Bedwell deposition at p. 35, should have clamped the logs first, before the last chain holding the logs to the bed of the truck was removed, Bedwell deposition at pp. 42–3, 62–3.

*A. INA's Comprehensive General Liability Policy*

2. In its motion for summary judgment, Mission contends that it is relieved of its obligation to provide the defendants coverage and a defense under the following language in its policy:

THIS POLICY IS SUBJECT TO THE FOLLOWING EXCLUSIONS:

This Policy shall not apply:—

.    .    .    .    .

Except insofar as coverage is available to the Assured in the underlying insurances as set out in the attached Schedule, this policy shall not apply:

.    .    .    .    .

(*o*) to any employee with respect to injury to or the death of another employee of the same Employer injured in the course of such employment.

Mission Insurance Policy at pp. 3–7 of Umbrella Liability Insurance Policy. The "underlying insurances" are the INA and Jefferson policies. The Court finds that if coverage is available to the defendants under the INA and Jefferson policies, exclusion (*o*) is inapplicable under the express terms of the Mission policy. Accordingly, it is necessary to address initially the motions for summary judgment filed by INA and Jefferson and the coverage issues raised under those policies.

3. The INA policy consists of two relevant parts under which the defendants claim coverage, Comprehensive General Liability Insurance and Comprehensive Automobile Liability Insurance. INA contends first that its Comprehensive General Liability Insurance is inapplicable to Bedwell's accident under an exclusion for "bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of (1) any automobile or aircraft owned or operated by or rented or loaned to any Insured, or (2) any other automobile or aircraft operated by any person in the course of his employment by any Insured" (hereafter "loading or unloading exclusion").

4. Defendants contend that the loading or unloading exclusion is inapplicable for two reasons. First, one basis of Bedwell's complaint could be that the defendants failed to use in a specified manner a certain piece of "mobile equipment." Mobile equipment is specifically excepted from the loading or unloading exclusion. Second, one reading of the complaint shows that the negligence of the defendants is alleged by Bedwell to be of a prior decisional or policy-making nature; under this construction of the complaint none of the defendants are charged with a negligent act occurring in the actual process of unloading which allegedly injured Bedwell.

5. "Automobile", as defined by the INA policy, "means a land motor vehicle, trailer or semitrailer designed for travel on public roads (including any machinery or apparatus attached thereto), *but does not include mobile equipment*". (emphasis added.) "Mobile equipment" is defined in the INA policy as follows:

"mobile equipment" means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to the Named Insured, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purposes of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, *loaders*, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; aircompressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment; (emphasis added).

6. It appears from Bedwell's deposition taken in the Clarke County action that Bedwell's principal theory of liability against the defendants *could be* that they failed to

instruct their employees to drive a piece of equipment, known as a Letourneau, up to the logs on the trailer and clamp the logs before the chain holding them onto the bed of the trailer was removed. There is no doubt that this Letourneau is a "loader" and, therefore, is "mobile equipment" as defined in the INA policy. Bedwell deposition at pp. 35, 36–7, 40, 45, 62–3.

■ 7. The Court finds that if Bedwell's complaint against the defendants alleges a failure to use a piece of "mobile equipment" in a particular manner, then the complaint does not fall within the loading or unloading exclusion in the INA General Comprehensive Liability Insurance which, by its terms, applies only to "bodily injury . . arising out of the . . . use, loading or unloading of . . . any automobile." Under this interpretation of Bedwell's complaint there is coverage under the Comprehensive General Liability Policy of INA.

8. However, if Bedwell's complaint does in fact allege nothing more than simple negligence in the loading and unloading of logs from his trailer, then the loading and unloading exclusion applies and there is no coverage under the INA General Comprehensive Liability Insurance.

9. The Court is not trying to avoid making a decision on a tough issue by finding that the state-court complaint can be read in either of two ways. The Court is of the opinion that the defendants in this case should not dictate to Bedwell the legal theory upon which Bedwell must proceed in state court. That choice is Bedwell's.[3]

■ 10. Assuming that Bedwell is alleging that the negligence of the defendants is based upon prior, remote acts of negligence in failing to establish safe procedures for loading and unloading, the Court finds that INA's loading or unloading exclusion is inapplicable since the alleged negligence of the defendants took place, if at all, well prior to and removed from the situs of Bedwell's accident. The parties have failed to cite a decision of the Alabama courts directly addressing this issue. However, cases in other jurisdictions all make the legitimate distinction between a prior, remote act of negligence (such as establishing a procedure or making decisions or even repairs) and an act of negligence occurring as a part of the unloading process. In the former contexts, the courts hold the unloading exclusions inapplicable. *See, e. g., Warner Hardware Co. v. Allstate Ins. Co.,* 309 Minn. 529, 245 N.W.2d 223, 227 (1976); *Con-*

**3.** *Cf. Carolina Aircraft Corp. v. American Mut. Liab. Ins. Corp.,* 517 F.2d 1076, 1077 (5th Cir. 1975) ("The [state-court] plaintiffs are the masters of their own pleadings; it is their pleadings and *not* the answers of [the state-court defendant] which determine the nature of [the state-court plaintiffs'] complaint [in a declaratory judgment action in the federal court brought by the state-court defendant seeking a declaration that the insurer owes the state-court defendant a defense under the terms of the policy.]") (emphasis in original). *But cf. Milliken v. Fidelity and Cas. Co. of New York,* 338 F.2d 35, 40 (10th Cir. 1964) ("But, the allegations of the complaint are not conclusive on the issue [whether the insurer has a duty to defend the insured under the terms of the insurance policy.] The duty to defend may attach at some later stage of the litigation if the issues of the case are so changed or enlarged as to come within the policy coverage. The reason for this rule is that '[u]nder the Federal Rules of Civil Procedure the dimensions of a lawsuit are not determined by the pleadings because the pleadings are not a rigid and unchangeable blueprint of the rights of the parties.' Thus, the insurer's

duty to defend an action brought in [a court such as the state courts of Alabama which have rules of civil practice which are modeled after the federal rules] against its insured may arise or attach at any stage in the litigation. And the duty [of the insurer to defend] does not attach where there are facts, extraneous to the allegations of the pleadings, which, if proved, make out a case against the insurer that is covered by the policy and which either are actually brought to the insurer's attention or could have been discovered by it through a reasonable investigation."); *C.A. Fielland, Inc. v. Fidelity & Cas. Co. of New York,* 297 So.2d 122, 127 (Fla.App.2d Div.1974) ("[I]f it later becomes apparent that claims not originally within the scope of the pleadings are being made which are within the insurance coverage, the insurance carrier upon notification would then become obligated to defend."). *See generally, Green v. Aetna Ins. Co.,* 349 F.2d 919, 926 (5th Cir. 1965) (dictum) (some cases present "too many variables to allow the Federal Court to adjudge ultimate liabilities on" the basis of the original, state-court complaint where that complaint can be amended).

tinental Nat'l. Ins. Co. v. Carriers Ins. Co., 55 Wis.2d 533, 200 N.W.2d 584, 586 (Wis. 1972); *Amery Motor Co. v. Corey*, 46 Wis.2d 291, 174 N.W.2d 540, 543 (1970); *Applehans v. Allstate Ins. Co.*, 389 F.2d 65 (10th Cir. 1968); *Industrial Underwriters Ins. Co. v. P & A Const. Co.*, 382 F.2d 313, 317 (10th Cir. 1967); *Canadian Indemnity Co. v. State Automobile Ins. Ass'n.*, 174 F.Supp. 71, 79–80 (D.C.Or.1959); *Gamble-Skogmo, Inc. v. St. Paul Mercury Indemnity Co.*, 242 Minn. 91, 64 N.W.2d 380, 392–93 (1954).

■ 11. INA contends further that its Comprehensive General Liability Insurance is inapplicable under an exclusion for "any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law." Scotch is not a defendant in Bedwell's Clarke County lawsuit. Had Scotch been sued, there would be no liability in tort on Scotch under Alabama law, since Bedwell would be restricted to asserting his rights under the Workmen's Compensation law. Ala. Code §§ 25–5–1 to 25–5–231 (1975). The defendants herein were not and are not Bedwell's employer or his workmen's compensation insurer who could be held liable under the Workmen's Compensation law for Bedwell's injuries. Therefore, the Court finds that the workmen's compensation exclusion does not apply to the defendants. *Strickland v. Transamerica Ins. Co.*, 481 F.2d 138, 148–49 (5th Cir. 1973); *Berry v. Aetna Casualty & Surety Co.*, 240 So.2d 243 (La.App.1970), *cert. denied* 401 U.S. 1005, 91 S.Ct. 1255, 28 L.Ed.2d 541 (1971). See also, *Wolsey v. Aetna Casualty & Surety Co.*, 346 So.2d 952, 953 (Ala.1977); *United States Fire Ins. Co. v. McCormick*, 286 Ala. 531, 243 So.2d 367 (Ala.1970).

■ 12. The only remaining coverage issue under INA's Comprehensive General Liability Insurance is whether the defendants were, at the time of Bedwell's accident, "executive officers" or "directors" of Scotch under the Persons Insured part of that insurance. The evidence is undisputed that defendants Thomas H. O'Melia, Sr., Thomas

H. O'Melia, Jr. and Dwight Harrigan were, during all material times, corporate officers and directors of Scotch. Furthermore, by Amended Endorsement # 2, effective February 24, 1977, the "Persons Insured" provision in the INA Comprehensive General Liability Insurance was amended to include, among others, the above-named defendants with respect to their liability arising out of (a) financial control of the Named Insured or (b) premises owned, maintained or controlled by them while said premises are leased to or occupied by the Named Insured (i. e., Scotch). The record evidence further reveals that the above-named defendants are "executive officers" of Scotch as that term has been construed by the Alabama courts. *See, e. g., United States Fire Ins. Co. v. McCormick*, 286 Ala. 531, 533–34, 243 So.2d 367 (Ala.1970). Accordingly, the Court finds that INA must provide a defense to defendants Thomas H. O'Melia, Sr., Thomas H. O'Melia, Jr. and Dwight Harrigan in Bedwell's Clarke County action and coverage to said defendants in accordance with the Comprehensive General Liability Insurance provisions of INA Policy Number GAL 34 49 56 if and only if Bedwell is alleging that the defendants engaged in prior, remote acts of negligence by failing to establish safe loading and unloading procedures.

13. The record presently before the Court does not permit a determination on whether defendants John Gerald Bradford, Jr., Millard Calvin Hamilton, Cecil Albert Nelson, Douglas Parden, Joseph Bettis Ernest, Jr., William Perry Fendley, and Gary Barnett were, at the time of Bedwell's accident, "executive officers" of Scotch.

*B. INA's Comprehensive Automobile Liability Policy*

■ 14. If Bedwell elects to construe his negligence claim as alleging negligence in the loading and unloading of the logs from his trailer rather than the prior, remote act of negligence in failing to provide safe premises, then the INA Comprehensive Automobile Liability Insurance provides coverage for defendants Thomas H. O'Me-

lia, Sr., Thomas H. O'Melia, Jr., and Dwight Harrigan. Under the automobile policy which INA has with Scotch, bodily injury is covered where the injury is incurred while loading or unloading any automobile. The definition section of the INA policy defines the term automobile in such a way so as to include the truck which Bedwell was driving at the time that his accident occurred. INA says in its answer to defendants' counterclaim that the language of clause (i) excludes coverage for the defendants as fellow employees of Bedwell. The defendants contend that they are "Insureds" under the policy with respect to Bedwell's accident because: (1) as a matter of Alabama law, the defendants, as executive officers, are not "fellow employees" of Bedwell; and (2) the language of the Persons Insured provision of the policy is ambiguous and must be construed in favor of the defendants.

15. In the recent decision of *Jones v. Watkins*, 364 So.2d 1144 (Ala.1978), the Alabama Supreme Court recognized the significant distinction between "employee" and an "executive officer" for the purposes of immunity from suit by an injured employee under the workmen's compensation statute. The court suggested[4] that employee status turns on the nature of the work being performed at the time of an accident:

> The answer to this question [of statutory immunity from suit] may well turn on the nature of the function or work being performed by the officer or director who may then become a co-employee of the injured employee. . . . [t]he test . . . [is] not the title of the person, but the nature and quality of the act he is performing. . . .
>
> An officer may exercise a dual function and enjoy a dual capacity in a corporation. Depending on his, or her, function at the time of injury, he, or she, may not be immune from suit by an injured employee.

Which function the officer is fulfilling is a matter of fact. [*sic*]

*Id.* at 1146.

■ 16. INA contends that the defendants are excluded from coverage under the fellow-employee exclusion of the automobile policy. The "Persons insured" part of the automobile policy provides, in part, as follows:

> Each of the following is an Insured under this insurance *to the extent set forth below* :
>
> (a) the Named Insured;
>
> (b) any partner or executive officer thereof, but with respect to a non-owned automobile only while such automobile is being used in the business of the Named Insured;
>
> (c) any other person while using an owned automobile, or a hired automobile, with the permission of the Named Insured . . . . .
>
> .  .  .  .  .
>
> None of the following is an Insured:
>
> (i) Any person while engaged in the business of his employer with respect to bodily injury to any fellow employee of such person injured in the course of his employment;

Scotch is the Named Insured in the policy. So, too, are Thomas H. O'Melia, Sr., Thomas H. O'Melia, Jr., and Dwight Harrigan.

17. The Alabama Supreme Court in *Wolsey v. Aetna Casualty & Surety Co.*, 346 So.2d 952 (Ala.1977) adopted the principle expressed in numerous Louisiana cases that an executive officer is one who, among other things, "exercises managerial responsibility for the affairs of the corporation generally, while the employee does not." *Id.* at 953. *See Highlands Insurance Co. v. Crews*, No. 78–659–H (S.D.Ala., filed June 28, 1979) (per Hand, J.) (applying *Wolsey* and concluding that assistant project manager was not exercising corporate, managerial responsibility).

---

**4.** It is far from clear, as argued by Mission, that an executive officer is *entitled* to workmen's compensation under *Jones v. Watkins*. The *Jones* decision follows the view expressed in *Queen City Furniture Co. v. Hinds*, 274 Ala. 584, 150 So.2d 756 (1963) where the court held that such benefits were available *only* "when the normal incidence of employment attends the performance of . . . nonexecutive work." *Id.* 150 So.2d at 761.

18. The record indicates that the O'Melias and Dwight Harrigan were acting in the capacity of executive officers at the time Bedwell was injured. *See* affidavits of O'Melias and Dwight Harrigan. Accordingly, under Alabama law these defendants are not fellow employees of Bedwell within the meaning of the exclusionary clause of the INA Comprehensive Automobile Liability Policy. The record does not fully disclose the duties of the other defendants (excluding Bedwell) and, accordingly, the Court cannot rule as to the other defendants at this time.

19. Admittedly the persons-insured portion of the INA automobile policy is somewhat ambiguous. In one portion of that clause coverage is extended to "(a) the Named Insured; (b) any partner or executive officer thereof . . . ." Then in sub-part (d) the policy contains the fellow-employee exclusion. A recent decision by the Louisiana Supreme Court construed a fellow-employee exclusion which is identical to the one found in the INA Comprehensive Automobile Liability Insurance policy. In *Credeur v. Luke*, 368 So.2d 1030 (La.1979), the Louisiana Supreme Court held that the exclusion was inapplicable where the policy included an individual as an insured in one clause, then allegedly excluded him from coverage under a fellow-employee exclusion. The court reasoned:

> The individual employed by the corporation, even as president, is not an employer of Alton Credeur [the injured employee] and is not exposed to a workmen's compensation obligation, nor clothed with the protective features of the compensation act. The cross-employee exclusion is not, even arguably, designed to apply with respect to an individual who is not plaintiff employee's employer. See *Motor Vehicle Casualty Company v. Smith*, 247 Minn. 151, 76 N.W.2d 486 (1956).
>
> Independent of the foregoing reasons, and more directly pertinent in the resolution of the legal issue before us, the provisions of the policy are ambiguous. In the one instance the policy declares that the named insured is an insured. In a second provision the policy declares in

effect that an employee is not an insured (in given circumstances). The established rule is that any doubt or ambiguity as to the meaning of a provision in an insurance policy must be construed liberally in favor of the insured and against the insurer. When the ambiguity relates to a provision which limits liability under the policy, the law requires that the contract be interpreted liberally in favor of coverage. *Craft v. Trahan*, 351 So.2d 277 (La. App. 3rd Cir. 1977).

368 So.2d at 1032.

20. The rationale of the *Credeur* decision applies equally to the fellow-employee exclusion cited by INA. First, none of the defendants is the employer of Bedwell and none of the defendants is exposed to a workmen's compensation obligation. As executive officers, none of the defendants are clothed with the protective features of the Alabama Workmen's Compensation Act. Second, the INA policy provisions are patently ambiguous. In one instance, the policy declares, without limitation, that executive officers of Scotch are insureds. In a second insured provision, the policy declares in effect that an employee is not an insured (in given circumstances). Third, the language of the Persons Insured part of the INA Comprehensive Automobile Liability Insurance reveals that when INA intended to exclude executive officers, it did so expressly. The policy specifically excludes as an insured "an executive officer with respect to an automobile owned by him or by a member of his household."

21. The established rule in Alabama, as in Louisiana, is that any doubt or ambiguity as to the meaning of a provision in an insurance policy must be construed liberally in favor of the insured and against the insurer. See, e. g., *St. Paul Fire and Marine Ins. Co. v. Thompson*, 280 Ala. 67, 189 So.2d 866, 869 (1966); *Rodgers v. Commercial Casualty Ins. Co.*, 237 Ala. 301, 303, 186 So. 684 (Ala.1939).

22. In summary, whether Bedwell is claiming that the negligence which injured him arose because of the failure to provide

a safe place to work or because of negligence in the loading and unloading of logs, there is coverage under the INA policy as to Thomas H. O'Melia, Sr., Thomas H. O'Melia, Jr., and Dwight Harrigan. If Bedwell is claiming that the negligence of the defendants is that they failed to provide a safe place to work, then there is coverage under INA's Comprehensive General Liability Policy. If Bedwell is claiming that the negligence of the defendants arose during the loading and unloading of logs from his trailer, then there is coverage under INA's Comprehensive Automobile Liability Policy.

23. Since coverage is available to Thomas H. O'Melia, Sr., Thomas H. O'Melia, Jr. and Dwight Harrigan under the INA policy, coverage is also provided to these defendants under Jefferson Insurance Company of New York Policy Number JE 65096, Mission Insurance Company Umbrella Liability Insurance Policy Number M 835421, and United States Fire Insurance Company Policy Number XS 3331. In light of the foregoing, the Court finds that it is unnecessary to consider the other coverage issues raised by Mission Insurance Company.

24. The motions for summary judgment filed by Mission Insurance, INA, and Jefferson Insurance Co. are denied. The motion for summary judgment filed by the defendants (except Bedwell) is granted to the extent that the plaintiff-insurer and counterclaim defendants-insurers owe defendants Thomas H. O'Melia, Sr., Thomas H. O'Melia, Jr., and Dwight Harrigan a defense and coverage under the policies in question, regardless of Bedwell's precise legal theory.