PER CURIAM.
Hospice Family Care (“HFC”) appeals from a judgment entered by the Madison Circuit Court in favor of Joseph Allen, the widower and dependent spouse of Suzanne Sharp Allen (“the employee”), pursuant to the Alabama Workers’ Compensation Act, § 25-5-1 et seq., Ala.Code 1975 (“the Act”).
The employee died in an automobile accident on Monday afternoon, February 3, 2014. On March 6, 2014, Allen filed a complaint in the circuit court against Shon-ja Tammy Pogue, David Maples, and Allstate Insurance Company (“Allstate”). Pogue, Maples, and Allstate each filed answers to Allen’s complaint.[1]
On April 14, 2014, Allen filed an amended complaint in which he added HFC as a defendant and sought an award of death benefits and burial expenses pursuant to the Act. HFC requested a separate trial, and it filed an answer to Allen’s amended complaint.[2] On November 25, 2014, the circuit court entered a pretrial order in which it determined, among other things, that “[t]he workers’ compensation case will be tried separately.”
A two-day trial on the workers’ compensation action began on March 2, 2015, and, on June 19, 2015, the circuit *1225 court entered a judgment.[3] The circuit court concluded that the employee had been an employee of HFC, that Allen had been wholly supported by the employee at the time of her death, that the employee had been a “traveling employee,” that the employee had been acting in the scope of her employment at the time of her death, and that there existed no substantial deviation from her employment that would bar recovery under the Act. The circuit court also concluded that certain policies of insurance were neither intended nor contemplated “to be substitute coverage for the requirement of HFC to provide workers’ compensation benefits through a self-insured program, comp insurance or any other plan.” The circuit court awarded Allen $6,500 in burial expenses, $51,254.64 (including attorney fees) in accrued benefits, and $605.09 per week (excluding attorney fees) in future benefits for 428 weeks. HFC filed a timely notice of appeal, and it requested oral argument, which was held by this court.

The Issues

In its appellate brief, HFC argues that the circuit court erred by awarding benefits to Allen pursuant to the Act because, it contends, the claim is barred by the going and coming rule, the claim is barred because the employee died in an accident after completing a personal errand, the circuit court failed to properly apply certain provisions of the Act, the circuit court failed to award a setoff for certain insurance benefits paid to Allen, and the circuit court awarded an amount in excess of the statutory limit on burial expenses.

The Standard of Review

“Section 25-5-81(e), Ala.Code 1975, provides the standard of review in a workers’ compensation case:
“‘(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
“ ‘(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.’
“Substantial evidence is ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
“ ‘Our review is restricted to a determination of whether the trial court’s factual findings are supported by sub *1226 stantial evidence. Ala.Code 1975, § 25-5-81(e)(2). This statutorily-mandated scope of review does not permit this court to reverse the trial court’s judgment based on a particular factual finding on the ground that substantial evidence supports a contrary factual finding; rather, it permits this court to reverse the trial court’s judgment only if its factual finding is not supported by substantial evidence. See Ex parte M&D Mech. Contractors, Inc., 725 So.2d 292 (Ala.1998). A trial court’s findings of fact on conflicting evidence are conclusive if they are supported by substantial evidence. Edwards v. Jesse Stutts, Inc., 655 So.2d 1012 (Ala.Civ.App.1995).’
“Landers v. Lowe’s Home Ctrs., Inc., 14 So.3d 144, 151 (Ala.Civ.App.2007). ‘This court’s role is not to reweigh the evidence, but to affirm the judgment of the trial court if its findings are supported by substantial evidence and, if so, if the correct legal conclusions are drawn therefrom.’ Bostrom Seating, Inc. v. Adderhold, 852 So.2d 784, 794 (Ala.Civ.App.2002),”
MasterBrand Cabinets, Inc. v. Ruggs, 10 So.3d 13, 16-17 (Ala.Civ.App.2008).

The Facts

The employee was a registered nurse employed by HFC as a day-shift nurse. Day-shift nurses worked from 8:00 a.m. to 4:30 p.m. The employee’s daily responsibilities as a day-shift nurse included driving to the residences of and providing care to approximately four patients, recording a voice message at the end of the shift regarding each patient’s condition for the benefit of a night-shift nurse, entering the billing codes of services provided for insurance purposes, and 'transcribing medical information regarding each patient on a shared computer database (“charting”). On average, charting, which was mandatory within 24 hours , of a home visit, required 2 to 3 hours of work per day. Charting could be done anywhere a laptop computer could be used.
On the afternoon of the automobile accident, the employee had telephoned Allen to tell him that she was on Winchester Road on her way from her last patient’s residence to their residence on Buddy Williamson Road, which was located off Winchester Road. At that time she had neither charted, nor entered the billing codes,'nor recorded the voice message. The employee informed Allen that, after she stopped at a pharmacy on Winchester Road to pick up a personal prescription, she would drive home. A document offered into evidence demonstrated that a prescription had been filled at a pharmacy on Winchester Road on February 3, 2014. The employee was in her vehicle traveling north on Winchester Road toward her home at a location past the pharmacy, but before the turn to Buddy Williamson Road, when her vehicle was struck by a southbound vehicle that entered her lane. The time of injury was listed as 3:46 p.m. The employee was pronounced dead at the scene at 4:10 p.m.
HFC had provided life insurance and accidental-death insurance for the employee at no additional cost to her, and the employee had also elected to purchase an additional $100,000 life-insurance policy. Allen and the employee’s adult daughter, Lauren Sharp, were the beneficiaries of those policies, which included a $50,000 payment from the additional $100,000 life-insurance policy. Allen incurred burial expenses in the amount of $7,474. .
Additional testimony presented at the trial demonstrated that HFC had provided each nurse employed by it with a portable laptop computer and a cellular telephone. Vehicles were not provided. HFC paid mileage;. however, mileage from the loca *1227 tion of an employee’s last home visit to an employee’s residence was not paid. Allen testified that the employee had not routinely arrived home from work at the same time each day. He said that her work schedule depended on the needs of her patients, that she usually placed a 20- to 30-minute telephone call to HFC when she got home, and that she used her laptop computer at home for charting. Allen said that the employee usually charted for approximately two hours each evening and that she regularly talked to the family members of her patients on the telephone or went to patients’ residences after 4:30 p.m.
Debra Chandler, the HFC director of nursing and the employee’s supervisor, testified that charting was mandatory within 24 hours of a home visit but that a nurse could complete his or her charting at any physical location he or she chose. However, according to Chandler, because of the character of the neighborhood where the office of HFC was located, nurses “were discouraged to come back to the office” to complete their charting, if it was “close to dark,” because Chandler “did not feel like they would be safe” to come to the HFC office alone. Chandler said:
“As long as the documentation got done, I left it to the nurses how they do it.
[[Image here]]
“To complete visits for that day, it would have included entering all of the medical data into the record of her assessment that day. It would have included calling the doctor if there was something that she needed to discuss. It would have included leaving a voice-mail at the end of the day for the on-call nurse that was coming on so that the on-call nurse was aware of where that particular patient stood for the day. That would be everything that would be due by the end of her workday.”
Michelle Millirons, the director of human resources for HFC, confirmed that charting could be done anywhere. Millirons said that a nurse could chart in a patient’s residence or driveway, at his or her residence, or at the HFC office. Kirsten Langston, the quality coordinator and acting compliance officer for HFC, testified that the amount of time necessary for charting varied but that, on average, charting required up to three hours per day. Donna Davenport, the HFC coordinator of volunteers, said that the voice-mail message could be placed from any location.
Millirons and Jamie Posey, the director of finance for HFC, each testified that a day-shift nurse who had finished his or her home visits could go home before 4:30 and that the pay of a nurse—a salaried employee—would not change. Langston testified that nurses were also allowed to complete a personal errand, like picking up a personal prescription, without seeking permission of a supervisor or requesting leave; however, Langston testified, if a patient needed a nurse, HFC required the nurse to be available to meet the patient’s need. Chandler testified that nurses filled out leave-request forms for approval to be off for a day or more and that a nurse was expected to notify the office if he or she needed to be off for a few hours. Chandler explained that if, for example, a day-shift nurse needed to be off duty at 3:30 p.m., a request would have to be submitted and approved so that another nurse would be available until the night-shift nurse became available at 4:30.
Chandler said that the employee had not requested to be off duty on February 3, 2014. Sonya Bradford, the director of compliance for HFC, and Chandler each testified that the employee had not charted on February 3, 2014, and Chandler testified that the employee had not left a voice-mail message for the night-shift nurse.

*1228
Analysis

Under the going and coming rule, accidents occurring while a worker is traveling on a public road while going to or coming from work generally fall outside the course of the employment. McDaniel v. Helmerich & Payne Int’l Drilling Co., 61 So.3d 1091, 1093 (Ala.Civ.App.2010); Turner v. Drummond Co., 349 So.2d 598, 603 (Ala.Civ.App.1977). HFC argues that the accident in this case did not arise out of and in the course of the employee’s employment. For injury to or death of an employee to be compensable under the Act, the injury or death must be caused by “an accident arising out of and in the course of [the] employment.” § 25-5-51, Ala.Code 1975. HFC argues that the employee was neither at work nor performing any work at the time of the accident. However, HFC ignores the circuit court’s conclusions regarding whether the employee was “coming from work.” In cases like this one, in which there can be so many variations in the facts and circumstances, the issue whether an employee is involved in an activity within the course of his or her employment when an accident occurs must be decided on a case-by-case basis.
“Pursuant to § 25-5-31, Ala.Code 1975, an employee’s injuries are compen-sable if his accident arose out of and in the course of employment. Although ‘“‘[c]ourts must liberally construe the workers’ compensation law “to effectuate its beneficent purposes,” ... such a construction must be one that the language of the statute “fairly and reasonably” supports.”” Fort James Operating Co. v. Irby, 911 So.2d 727, 733 (Ala. Civ.App.2005) (quoting Ex parte Weaver, 871 So.2d 820, 824 (Ala.2003), quoting in turn Ex parte Dunlop Tire Corp., 706 So.2d 729, 733 (Ala.1997), quoting in turn Ex parte Beaver Valley Corp., 477 So.2d 408, 411 (Ala.1985)). Our supreme court has' said that ‘[a]n injury to an employee arises in the course of his employment when it occurs within the period of his employment, at a place where he may reasonably be and while he is reasonably fulfilling the duties of his employment or engaged in doing something incident to it.’ Massey v. United States Steel Corp., 264 Ala. 227, 230, 86 So.2d 375, 378 (1955) (emphasis added). Regarding the ‘going and coming’ rule, our supreme court has stated:
“‘Generally, Alabama law has held that injuries sustained in accidents that occur while an employee is traveling to and from work are not covered under the Act because those injuries do not meet the “arising out of and in the course of employment” requirement. See Hughes v. Decatur Gen. Hosp., 514 So.2d 935 (Ala.1987); Exchange Distrib. Co. v. Oslin, 229 Ala. 547, 158 So. 743 (1935); Tucker v. Die-Matic Tool Co., 652 So.2d 263 (Ala.Civ.App.1994); Walker v. White Agencies, Inc., 641 So.2d 795 (Ala.Civ.App.1993); Terry v. NTN-Bower Corp., 615 So.2d 629 (Ala.Civ.App. 1992); Winn-Dixie Stores, Inc. v. Smallwood, 516 So.2d 716 (Ala.Civ.App.1987).’
“Ex parte Shelby County Health Care Auth., 850 So.2d 332, 336 (Ala.2002). In Ex parte Shelby County Health Care Authority, the supreme court explained that only a few exceptions exist to the ‘going and coming’ rule:
“ ‘Alabama courts have carved out only a few exceptions to this general rule:
“‘“Such exceptions include situations where the employer furnishes the employee transportation or reimburses him for his travel expenses; where the accident occurs on the employer’s property or on public property that is tantamount *1229 to the employee’s ingress to and egress from the employer’s property; or where the employee is injured crossing a public street between the main premises of the employer and the parking lot owned by the employer.”
“ ‘Terry v. NTN-Bower Corp., 615 So.2d [629] at 631 [ (Ala.Civ.App.1992)] (citations omitted). See also Meeks v. Thompson Tractor Co., 686 So.2d 1213, 1216 (Ala.Civ.App.1996). An additional exception to the general rule arises when an employee, during his travel to and from work, is engaged in some duty for his employer that is in furtherance of the employer’s business. See Tucker v. Die-Matic Tool Co., 652 So.2d [263] at 265 [ (Ala.Civ.App.1994) ].’
“Ex parte Shelby County Health Care Auth., 850 So.2d at 336 (emphasis added).”
McClelland v. Simon-Williamson Clinic, P.C., 933 So.2d 367, 370 (Ala.Civ.App.2005).
In this case the employee was acting in furtherance of the business affairs of HFC. We base our conclusion on the following facts. HFC required the employee to be available to care for her patients until 4:30 p.m., HFC furnished a laptop computer and a cellular telephone to enable the employee to work from home, and HFC discouraged the employee from returning to the office after seeing her patients each day because of the character of the neighborhood where the office of HFC was located. Furthermore, the accident occurred before 4:30 p.m., the employee had not requested any leave on February 3, 2014, and it had been the employee’s habit to discharge certain duties at home.
Therefore, the evidence demonstrated that HFC had encouraged nurses to complete integral parts of their duties at home or in any other location they chose. Because the employee was still in the process of performing her duties for HFC at the time the accident occurred, this case falls under the last exception to the going and coming rule. The fact that nurses were encouraged to go home to complete their required tasks is a strong factor in our determination that, at the time the accident occurred, the employee was engaged in a journey that was in furtherance of the business of HFC and that she was still fulfilling the duties HFC required of her. See McClelland, supra.
The circuit court reasonably concluded that the employee’s workday had not ended at the time of her death. Therefore, the circuit court did not err by concluding that the accident arose out of and in the course of the employee’s employment and that the employee was still working and was not, therefore, “coming from work.” In other words, because the employee was fulfilling her duties to HFC at the time the accident occurred, the accident arose out of and in the course of her employment. Her death, as a result of that accident, is compensable.
The final question regarding HFC’s first issue is whether the employee’s stop at the pharmacy, which amounted to a purely personal errand, barred an award of benefits under the Act. See Young v. Mutual Sav. Life Ins. Co., 541 So.2d 24 (Ala.Civ.App.1989)(concluding that a traveling employee is within the course of the employment at all times while in his or her prescribed territory, except when engaged in a purely personal errand). However, as Judge Terry Moore pointed out in his treatise on workers’ compensation law:
“Alabama law provides that not any deviation places an accident out of the course of the employment; rather, a substantial deviation occurs when the *1230 employee abandons the employment in pursuit of a purely personal objective. Thus, an employee will not be entitled to compensation when the accident occurs while the employee has left the employment route to run a completely personal errand that does not benefit the employer.”
1 Terry A. Moore, Alabama Workers’ Compensation § 11:44 (2nd ed.2013)(footnotes omitted). In Queen City Furniture Co. v. Hinds, 274 Ala. 584, 150 So.2d 756 (1963), Hinds, an employee, had deviated from the business of his employer to go on a personal errand to a post office. 274 Ala. at 587, 150 So.2d at 759. At the time of a fatal accident, the “personal enterprise” had ended and Hinds was going to his home, where he worked. 274 Ala. at 589, 150 So.2d at 760. The Hinds court concluded that the trial court was “fully justified in its finding that Mr. Hinds’ injuries arose out of and were in the course of his employment.” Id. Similarly, in this case, testimony demonstrated that, on the day the accident occurred, the employee had deviated from the business of HFC for a period of minutes to stop at the pharmacy, that the errand had ended, and that the employee was on her way to her residence. Testimony demonstrated that, at the time of the accident, the employee was not “off the clock,” that she routinely worked from home for several hours each evening, and that, on the day of the accident, she had not completed her daily duties. Moreover, Langston testified that it had not been against any HFC policy for nurses to complete a personal errand without seeking permission of a supervisor or requesting leave. The circuit court did not err by concluding that the employee’s personal errand was not a substantial step outside her employment; the deviation was minimal, transitory, slight, and insubstantial. See Savin Corp. v. McBride, 134 Or.App. 321, 326, 894 P.2d 1261.1262 (1995).
Next, HFC argues that the circuit court erred by failing to award a setoff for the life-insurance and death benefits that had been paid to Allen. HFC argues that workers’ compensation is not designed to allow for a double recovery, which is true in the context of recoveries against liable third parties. See § 25-5-11, Ala.Code 1975. We also agree with HFC’s assertion that it was entitled to provide other types of insurance to its employees. See § 25-5-8(a), Ala.Code 1975, which provides, in pertinent part:
“Notwithstanding any other provision of the law to the contrary, the obligations of employers under law for workers’ compensation benefits for injury of employees may be insured by any combination of life, disability, accident, health, or other insurance provided that the coverages insure without limitation or exclusion the workers’ compensation benefits of this state.”
(Emphasis added.)
HFC directs our attention to § 25-5-57(c), Ala.Code 1975, which allows for set-off for other recovery in calculating the amount of workers’ compensation due in certain circumstances. Although in its reply brief HFC asserts that it is not seeking a setoff under § 25-5-57(c)(l), it discusses that subsection in its initial brief. Section 25-5-57(c)(l) provides that “[i]f and only if the employer provided the benefits or paid for the plan or plans providing the benefits deducted,” the employer may reduce the amount of benefits paid pursuant to a disability plan, a retirement plan, or another plan providing for sick pay. According to HFC, it had provided “life insurance” and “accidental death benefits,” which had not limited or excluded benefits under the Act; however, HFC does not claim that it had provided a disability plan, a retirement plan, or another plan provid *1231 ing for sick pay or that the employee’s life-insurance or accidental-death benefits were a disability plan, a retirement plan, or another plan providing for sick pay.
HFC next points to § 25-5-57(c)(3), and, in its reply brief, it asserts that it is seeking a setoff pursuant to that subsection, which provides:
“If an employer continues the salary of an injured employee during the benefit period or pays similar compensation during the benefit period, the employer shall be allowed a setoff in weeks against the compensation owed under this article. For the purposes of this section, voluntary contributions to a Section 125-cafeteria plan for a disability or sick pay program shall not be considered as being provided by the employer.”
We are not persuaded that the payments received from employer-provided disability policies for injuries sustained by • the employees in Ex parte City of Birmingham, 988- So.2d 1035 (Ala.2008); City of Birmingham v. George, 988 So.2d 1031 (Ala.Civ.App.2007); Ex parte Fort James Operating Co., 895 So.2d 294 (Ala. 2004); Cross v. Goodyear Tire & Rubber Corp., 793 So.2d 791 (Ala.Civ.App.2000); and Ex parte Dunlop Tire Corp., 706 So.2d 729 (Ala.1997), which supported setoffs in those cases, are sufficiently similar to the death benefits provided to Allen in this case. Moreover,, the plain language of § 25—5—57(c)(3) does not apply to a deceased employee but, rather, applies to a setoff for disability benefits or sick pay paid to an “injured employee” during the weeks the employee’s salary or similar compensation was continued while the employee could not work.
We need not review HFC’s last issue because Allen concedes that the circuit court erred by awarding $6,500 in burial expenses. The judgment of the circuit court is reversed and the cause is remand insofar as it awarded Allen $6,500 in burial expenses. The circuit court is instructed to award an appropriate amount-for burial expenses pursuant to § 25-5-67, Ala.Code 1975. In all other respects the judgment of the circuit court is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur. ' ” ' ’ '
MOORE, J., concurs in part and concurs in the result in part, with writing.

. Allstate later filed a motion in which it elected to opt out of the action, and, on January 29, 2015, the circuit court entered an order dismissing Allstate from the action.

. Thereafter, the circuit court granted a motion filed by the Healthcare Workers' Compensation Self-Insurance Fund in which it sought to intervene to enforce its subrogation rights pursuant to § 25-5-11(a), Ala.Code 1975.

. Generally, an appeal may be taken from only a final judgment. See § 12-22-2, Ala. Code 1975. A final judgment is one "that conclusively determines the issues before the court and ascertains and declares the rights of the parties involved." Bean v. Craig, 557 So.2d 1249, 1253 (Ala. 1990). The circuit court did not sever Allen's claims against Po-gue and Maples pursuant to Rule 21, Ala. R. Civ. P.; instead, it ordered a separate trial of the workers' compensation action under Rule 42(b), Ala. R. Civ. P. Thus, the judgment was not a final judgment because it did not resolve all the issues before the court or ascertain and declare the rights of all the parties. See Stephens v. Fines Recycling, Inc., 84 So.3d 867, 872 (Ala.2011), for a thorough explanation of the distinctions between severance under Rule 21 and a separate trial under Rule 42(b).
The main exception to the requirement that an appeal be taken from a final judgment is when a trial court has certified a judgment deciding fewer than all the pending claims or resolving the issues involving fewer than all the parties as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P. See Bean, 557 So.2d at 1253. Therefore, we reinvested the circuit court with jurisdiction to consider whether to enter an order certifying the judgment as final pursuant to Rule 54(b). The circuit court entered an order certifying the judgment as final pursuant to Rule 54(b) on April 21, 2016; therefore, the judgment is a final judgment capable of supporting an appeal.