158 So. 743

EXCHANGE DISTRIBUTING CO. v. OSLIN.

6 Div. 578.

Supreme Court of Alabama.

Jan. 17, 1935.

548

Bowers & Dixon and Thos. F. McDowell, all of Birmingham, for appellant.

John W. Altman and J. L. Drennen, both of Birmingham, for appellee.

KNIGHT, Justice.

Proceedings for recovery of compensation under the Alabama Workmen's Compensation Act (Code 1923, § 7534 et seq., as amended), instituted by Mrs. Willie A. Oslin, widow of the deceased employee, E. G. Oslin, suing for the benefit of herself and the two minor children of the deceased.

Upon the trial of the cause, the court entered judgment awarding compensation as claimed, and it is to review this judgment that the cause appears in this court on petition for certiorari.

The judgment was rendered in the cause on the 14th day of February, 1934, and on the 15th day of March, 1934, the defendant, employer, filed a motion to set aside the "verdict" and to grant it a new trial. This motion was regularly continued "on motion of the parties," to April 28, 1934, upon which date the court overruled the same, the defendant duly reserving an exception to this action of the court.

The cause has been submitted here on motion to dismiss the appeal and on the merits.

The appellee takes the position here that, as the statute provides for review in compensation cases only by certiorari, and as the statute also provides that the aggrieved party must apply for the writ within thirty days from the rendition of the decree, the application or petition to this court for writ of certiorari came too late, the decree awarding plaintiff compensation having been entered on February 14, 1934. The further contention of the plaintiff, respondent to the petition here, is that a motion for a new trial, though timely made, cannot serve to extend the time for filing petition for certiorari. In this, movant is mistaken.

Of course, the appeal by certiorari must be taken within thirty days from the decree; and in reviewing compensation proceedings, the time of taking the appeal is jurisdictional. We have so held. Bessemer Engineering & Construction Co. v. Smith, 216 Ala. 348, 113 So. 290; Woodward Iron Co. v. Bradford, 206 Ala. 447, 90 So. 803; Ex parte Louisville & Nashville R. R. Co., 214 Ala. 489, 108 So. 379; Minge v. Smith, 206 Ala. 330, 89 So. 473; Burgin v. Sugg, 210 Ala. 142, 97 So. 216; Walden v. Leach, 201 Ala. 475, 78 So. 381; Coker v. Fountain, 200 Ala. 95, 75 So. 471; Boshell v. Phillips, 207 Ala. 628, 93 So. 576.

Likewise, we have held that if an appeal is not taken within the time provided by section 6127 of the Code, it would be dismissed, being a jurisdictional matter. Burgin v. Sugg et al., supra.

However, this court is committed to the proposition that a motion for new trial, seasonably made, suspends the judgment, and it does not become final, for the purpose of an appeal until the motion is disposed of; and the time within which an appeal from a judgment, after the rendition of which a motion for a new trial has been seasonably made, must be taken under section 6127, begins to run from the date the trial court rules upon the motion for a new trial. Florence Cotton & Iron Co. v. Field, 104 Ala. 471, 16 So. 538; Stallings v. Clark et al., 218 Ala. 31, 117 So. 467; Liverpool & London & Globe Ins. Co. v. Lowe et al., 208 Ala. 12, 93 So. 765; Wilder v. Bush, 201 Ala. 21, 23, 75 So. 143; Shipp v. Shelton, 193 Ala. 658, 662, 69 So. 102.

In the case of Birmingham Clay Products Co. v. White, 226 Ala. 89, 145 So. 668, 669, the observation is there pertinently made, that "circuit courts and the judges thereof are invested with plenary power in the application and enforcement of the Workmen's Compensation Act, and are authorized to proceed summarily in ascertaining the facts. We entertain no doubt that they have the power and jurisdiction, on timely application and for good and sufficient cause, to vacate and set aside a judgment previously rendered, and re-examine the facts. Such power is essential to the administration of justice. State ex rel. Anseth v. District Court of Koochiching County, 134 Minn. 16, 158 N. W. 713, L. R. A. 1916F, 957; 28 R. C. L. 827, § 116."

It is thus apparent that the courts have the same power over judgments and decrees under the Workmen's Compensation Act, as they possess over judgments and decrees in other cases. The same rule which would suspend the operation of a judgment or decree in ordinary cases at law, pending consideration of a motion for new trial at law, applies to judgments and decrees under the Workmen's Compensation Act.

We are at the conclusion, therefore, that the motion to dismiss the appeal in the case, which was taken by certiorari within thirty days after the motion for new trial was overruled, is without merit, and must be overruled.

We are thus brought to a consideration of the appeal on its merits.

The court, on consideration of the evidence, and the facts agreed on by the parties, awarded the plaintiff compensation for the accidental death of her husband.

This court long since announced the rule governing review here of cases arising under the Workmen's Compensation Act. We have uniformly held that, if there is any reasonable view of the evidence that will support the conclusion reached by the trial court, the finding and judgment will not be disturbed. Birmingham Clay Products Co. v. White, supra; Ex parte De Bardeleben Coal Co., 212 Ala. 533, 103 So. 548; Ex parte Sloss-

Sheffield S. & I. Co., 207 Ala. 219, 92 So. 458. If there is any legal evidence to support the court's finding, it is conclusive.

The record before us presents but a single question, Was there any legal evidence offered on the trial that supported the court's findings? If there was, we will not disturb the conclusion of the court.

The rule declared in Cobb v. Malone & Collins, 92 Ala. 630, 9 So. 738, will not be applied in considering here motions for new trial in cases arising under the Workmen's Compensation Act. Birmingham Clay Products Co. v. White, supra.

The defendant, in its answer, admitted "that plaintiff was the wife of deceased, E. G. Oslin, at the time of his death; that plaintiff's intestate was employed by the defendant; that plaintiff's intestate was run over by a speeding automobile and that he received injuries thereby which a few days later resulted in his death."

The defendant denied, however, that at the time of the alleged injury the plaintiff's intestate was engaged in the business of his employer.

On the trial of the cause it was agreed between the parties to the suit: "That deceased was employed by the defendant at the time of his death; that if the defendant is subject to the Workmen's Compensation Act of Alabama, and if the plaintiff is entitled to recover compensation at all for the death of deceased, she would be entitled to recover compensation under the Workmen's Compensation law at the rate of $14.00 per week for a period of three hundred weeks, unless liability therefor otherwise terminated by operation of law."

The evidence shows without dispute that the defendant, the Exchange Distributing Company, is a brokerage concern dealing in fruits and produce, and occupied a part of a certain large building, which was located on First avenue and Tenth street, in the city of Birmingham, Ala. The building was 375 feet long, and is owned by the Exchange Distributing Company and others, and was occupied, at the time of the accident to plaintiff's intestate, by Bell-Rogers, Norton & Son, Hamilton & Robinson, Marshall, Jordan & Keith, and by the Exchange Distributing Company. All the occupants rented their quarters from the Exchange Distributing Company. The building was located some 35 or 40 feet from the street line. The lessor, the Exchange Distributing Company, furnished refrigeration for all the tenants. The plaintiff's husband was employed by the Exchange Distributing Company, and he had nothing to do with the tenants. His duties were to look after the machinery used to supply refrigeration for the building, and to see that it operated at all times properly. He had no regular hours, but was subject to duty, and to call at any hour, day or night. The evidence shows that he spent much time on duty at night. On the night of September 21, 1933—the night the deceased received his fatal injuries—everything about the plant was in proper order, the plant had been locked up, the usual lights for the night were on, all employees had left, and only the night watchman was on duty. So far as any one knew, who testified in the case, Mr. Oslin had completed his day's work.

Around 7 p. m. of the day of the accident, Mr. Oslin went to the store of Mrs. Gallagher, which was located across a public street from the Exchange Distributing Company's building, and purchased a Coca-Cola, and drank it. He was then dressed in such clothes as were usually worn by him while working around the plant. After drinking the Coca-Cola, the deceased left the store of Mrs. Gallagher, and stood for a short while on the sidewalk, which was across the street from the defendant's building, talking with one A. J. Driggers, another employee of defendant, but who was off duty at the time. Mr. Driggers was an assistant to Mr. Oslin. Oslin then stepped to the front door of Mrs. Gallagher's store and bade Mrs. Gallagher "good-night." At that time the car of deceased was parked on the opposite side of the street "directly in front of the fish house right side of the garage." Oslin, after bidding good night to Mrs. Gallagher, started walking across the street toward his car and the fish house. But the evidence does not disclose whether he was in fact making for his car or the fish house. However, while going to the car or the fish house, each being in the same general direction, and while in the public street, he was struck by a moving truck, and fatally injured. This truck was neither owned by the defendant, nor was it operated by any of its servants or agents.

Mr. A. J. Driggers, who was introduced as a witness in the case at the instance of the plaintiff, testified, in substance, that he was employed by the defendant as an assistant to Mr. Oslin; that Mr. Oslin's car was parked right about even with where they leave the road up against the platform that was flush with the Exchange Distributing Company building. "I don't know just where the car hit him; it might have dragged him twelve or fifteen feet; the place was locked up and the night lights were on, and the place had been

put to rest for the day. I called the ambulance myself; I had keys to the place and unlocked the doors myself; I later gave the keys to Mrs. Thomas and asked her to lock the gates, and I went to the hospital." Further, the witness testified: "Mr. Oslin's duties would not carry him to Mrs. Gallagher's store, and if he went to her store, it was on matters of his own."

The foregoing, we think, states the evidence in its essential features.

In order that liability, under the Workmen's Compensation Act, may be fastened upon the employer, the burden is upon the one, who would recover compensation in such case, to show that the injury or death, as the case may be, of the employee was caused by an accident arising out of and in the course of his employment. It is not sufficient that the injury or death of the employee arose from an accident received in the course of the employment, but it must also arise out of the employment. Code, § 7534; Barnett v. Britling Cafeteria Co., 225 Ala. 462, 143 So. 813, 85 A. L. R. 85; Prayther v. Deepwater Coal & Iron Co., 216 Ala. 579, 114 So. 194; Hardisty v. Woodward Iron Co., 214 Ala. 256, 107 So. 837.

The general rule is that if an employee is injured while going to or returning from his work to his home, *or to or from some point not visited for the discharge of a duty arising out of the employment, or while in the use of a public highway used by the public generally, he does not come within the* protection of the Workmen's Compensation Act.

Mr. Honnold in his treatise on the American and English Workmen's Compensation Laws, volume 1, § 115, states the rule, in discussing "risks due to employment" as follows: "The use of the words 'arising out of,' or words of similar import, makes it a condition precedent to the right to recover compensation that the occurrence shall have resulted from a risk *reasonably incident to the employment;* that there be a causal connection between the conditions under which the employee worked and the resulting injury. While the occurrence need not have been foreseen or anticipated, it must appear after the event to have had its origin in a *risk* connected with the employment, and to have flowed from that source, as a rational consequence." (Italics supplied.)

In the case of Taylor v. Birmingham Electric Co., 213 Ala. 282, 104 So. 527, 529, it is held that, where the deceased, a track layer for defendant street railway company, boards its street car to go home, riding on transportation ticket furnished him by the company, an injury to him from a passing automobile, while he was alighting from the car, was not an injury arising out of and in the course of his employment within the terms of the Workmen's Compensation Act. Justice Bouldin, in speaking for the court in the case, observed: "He was in the public street, using it as such, and such use had no relation to service for the employer, was not the premises of the employer within subd. (J) of our compensation law."

The general rule, that if an employee is injured while going to or returning from his work to his home, or to or from some point not visited for the discharge of a duty arising out of the employment, or while in the use of a public highway used by the public generally, he does not come within the protection of the Workmen's Compensation Act, like other rules, has its exceptions.

This court, by a majority holding, in the case of Barnett v. Britling Cafeteria Co., supra, expressly noted the following exception to the general rule above stated, wherein the Chief Justice, in speaking for the majority, said: "But there is an exception to the general rule, and the employment is not limited by the actual time when the workman reaches the scene of his labor and begins it nor when he ceases; but includes a reasonable time, space, and opportunity before and after while he is at or near his place of employment. One of the tests is whether the workman is still on the premises of his employer. This, while often a helpful consideration, is by no means conclusive. A workman might be on the premises of another than his employer, or in a public place, and yet be so close to the scene of his labor, within its zone, environments, and hazards as to be, in effect, at the place and under the protection of the act. Honnold on Workmen's Compensation, §§ 107 and 109. Indeed, our own court is in line with the foregoing, and, after stating that the employee need not necessarily be in the actual discharge of a duty connected with the employment, says: 'Within the purview of such naturally related and incidental acts in the course of the employment is the movement of the employee in entering, at the appropriate time, the employer's premises to discharge his function; his preparation to begin and to terminate his actual service; and to leave the premises at an appropriate time after the completion of his actual service.' Jett v. Turner, 215 Ala. 352, 110 So. 702, 704; Benoit Coal Min. Co. v. Moore, 215 Ala. 220, 109 So. 878, and cases cited."

552

. This court, in a majority opinion, held in the Barnett v. Britling Cafeteria Co. Case, supra, that the plaintiff's case came within the protection of the Workmen's Compensation Act. The majority of the court in that case was of the opinion that the evidence showed: "That the plaintiff * * * sustained her injury by slipping on the sidewalk immediately in front of the defendant's place of business and while on her way to report for duty and just before entering the way used by all employees for the purpose of discharging the duties to which they were employed. The sidewalk in front of the defendant's place of business, while a public one and used by the public generally, was also used by the defendant as a necessary connection with its business. It was used not only by the public generally in passing, but as the only way of entrance to defendant's place of business by his customers and his employees as well. Not only this, but the defendant made use of it for other purposes in connection with his business, in fact, had used the sidewalk at or about that time for the purpose of washing the plate glass windows on the outside. * * * True, the sidewalk was a public highway, but so much thereof as was in front of the defendant's place of business was a necessary adjunct and used in connection with the business and in which the plaintiff was employed, and the sidewalk was, to a limited degree, and purpose, a part of the defendant's premises."

While the writer (along with Justices Brown and Gardner) dissented from the conclusions of the majority in the Barnett Case, supra, and is still unchanged in his views as expressed in his dissenting opinion, yet adopting, as we must, the rule, along with its exception, as declared in the majority opinion in the Barnett Case, the conclusion is inescapable, that the injury to plaintiff's husband did not arise out of and in the course of his employment.

■ Confessedly, under the undisputed evidence in the case, the duties of the deceased had terminated, he had left the zone of his employment, had gone to a store which was on the opposite side of a public street from the place of his employment, on a mission wholly his own, and having no connection whatever with the duties he owed the defendant, and was in no wise in furtherance of his employer's business. In going to the store on his own mission, he had to cross a public street or highway of the city of Birmingham, and in returning he had again to cross the same street. The dangers incurred in going on this personal mission were in no wise connected with the business he was engaged in, nor was this danger incidental to the character of the business in which he was employed, but was wholly independent of the relation of master and servant.

The facts of this case are wholly different from the facts in the Barnett Case, supra, and this case is not controlled thereby.

We are at the conclusion that the court erred in the decree rendered, awarding compensation to the plaintiff. For this error, the judgment must be reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.