933 So.2d 367 (2005)
Bryan McCLELLAND
v.
SIMON-WILLIAMSON CLINIC, P.C.
2031075.
Court of Civil Appeals of Alabama.
November 4, 2005.
Certiorari Denied January 13, 2006.
*368 Shay Samples and Bruce J. McKee of Hare, Wynn, Newell & Newton, Birmingham, for appellant.
Joseph H. Driver and Donald E. Kirkpatrick II of Carr, Allison, Pugh, Howard, Oliver & Sisson, P.C., Birmingham, for appellee.
Alabama Supreme Court 1050244.
THOMPSON, Judge.[1]
Bryan McClelland, M.D. ("the doctor"), sued Simon-Williamson Clinic, P.C. ("the clinic"), seeking workers' compensation benefits for injuries he claims he sustained on February 7, 2000, in the line and scope of his employment.[2] The clinic answered and denied liability. The clinic later filed a motion for a summary judgment, and the doctor filed a motion for a partial summary judgment as to the issue of workers' compensation coverage. On April 23, 2004, the trial court entered a summary judgment in favor of the clinic. That judgment stated, in relevant part:
"The undisputed material facts are the following:
"[O]n the morning of February 7, 2000, the [doctor] was seriously injured when his automobile flipped and rolled while he was attempting to avoid another vehicle on U.S. Highway 280 West. The [doctor] was at the time traveling from his home to Shelby Baptist Hospital for morning rounds there.
"The [doctor] owned his vehicle and received no reimbursement from [the clinic] for mileage. His trip to Shelby Baptist was normal and customary; the [doctor]'s practice involved making morning rounds there whenever he was working or on call. The [doctor] would typically arrive at the hospital between 6:45 and 8:00 a.m.
"The [doctor]'s employment with [the clinic] was pursuant to an employment agreement. Under this agreement, the [doctor] was obligated to answer calls from or about patients 24 hours a day.1 The [doctor] was not formally on duty at the time of the accident, however. Under his contract with [the clinic], the [doctor]'s standard hours at the clinic were from 9:00 a.m. to 5:00 p.m.

*369 "Before setting out that morning, the [doctor] had received a couple of calls from the hospital about patients. He was at his home when he fielded those calls. It is common for the [doctor] to receive such calls at his home. Further, on the morning of the accident, the [doctor] received a call from his answering service while he was in his automobile and then talked to a patient, directing that the patient meet him at the hospital or the clinic.2 The doctor, however, was already en route to the hospital when he received the call.
"The calls that the [doctor] received, both at home and while he was in his vehicle, did not necessitate that he make any special trip to the hospital. His trip was not to attend to any emergency; rather, he was simply following his customary practice and routine. The [doctor] received no additional compensation as a result of receiving the calls at home or in his vehicle on the morning of his accident, moreover.
"Alabama's workers' compensation laws generally cover `injuries by accident arising out of and in the course of the employment.' § 25-5-1(8), Ala.Code 1975. The `arising out of' requirement generally involves a causal connection between the injury and the nature of the employment, while the `in the course of' requirement refers to factors such as the time, place and circumstances of the accident at issue.
"Under these requirements for coverage, an employee injured in an accident on his way to work is generally not covered under the [Workers' Compensation] Act [§ 25-5-1 et seq., Ala.Code 1975]. See e.g., Terry v. NTN-Bower Corp., 615 So.2d 629, 631 (Ala.Civ.App. 1992). Every rule has its exceptions, as the saying goes, so the focus is whether any such exception applies.
"There are cases that recognize an exception to the rule, and, thus, coverage under the Act, if an employer furnishes the transportation or reimburses the employee for his traveling expenses. Under the facts described above, this Court concludes that the grounds for this exception do not exist here, and the [doctor] does not really argue to the contrary.
"Instead, battle is joined over the question whether the [doctor] was engaged in a duty in connection to his employment while en route to the hospital. In arguing that he was, the [doctor] points to the fact that he was on call and was in communication with patients on his cell[ular] [tele]phone while traveling.
"The fact remains, however, that the [doctor]'s travel to the hospital on the day of the accident was pursuant to his normal and routine commute. While he was on call at the time of the accident, the [doctor] was not on duty. His trip on that day, for example, was not the result of a directive by the clinic to make a special trip in order to address some emergency.
". . . .
"For these reasons, the Court concludes that the [doctor]'s accident falls within the `going and coming' rule, precluding coverage under the workers' compensation laws. [The clinic]'s motion for summary judgment must accordingly be GRANTED.
1 The [doctor] recognized that this obligation also stems from the applicable medical standard of care.
2 [The clinic] paid for the [doctor]'s [cellular telephone] that was used to make and receive calls while the [doctor] was in his vehicle."
The doctor timely appeals.
"A party is entitled to a summary judgment when `there is no genuine issue *370 as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.' Rule 56(c)(3), Ala. R. Civ. P. `Our review of a summary judgment is de novo.' Crutcher v. Wendy's of North Alabama, Inc., 857 So.2d 82, 85 (Ala.2003)."
Beachcroft Props., LLP v. City of Alabaster, 901 So.2d 703, 707 (Ala.2004) (a case in which the parties had filed cross-motions for a summary judgment).
Pursuant to § 25-5-31, Ala.Code 1975, an employee's injuries are compensable if his accident arose out of and in the course of employment. Although "`"[c]ourts must liberally construe the workers' compensation law `to effectuate its beneficent purposes,' . . . such a construction must be one that the language of the statute `fairly and reasonably' supports."'" Fort James Operating Co. v. Irby, 911 So.2d 727, 733 (Ala.Civ.App.2005) (quoting Ex parte Weaver, 871 So.2d 820, 824 (Ala.2003), quoting in turn Ex parte Dunlop Tire Corp., 706 So.2d 729, 733 (Ala.1997), quoting in turn Ex parte Beaver Valley Corp., 477 So.2d 408, 411 (Ala. 1985)). Our supreme court has said that "[a]n injury to an employee arises in the course of his employment when it occurs within the period of his employment, at a place where he may reasonably be and while he is reasonably fulfilling the duties of his employment or engaged in doing something incident to it." Massey v. United States Steel Corp., 264 Ala. 227, 230, 86 So.2d 375, 378 (1955) (emphasis added). Regarding the "going and coming" rule, our supreme court has stated:
"Generally, Alabama law has held that injuries sustained in accidents that occur while an employee is traveling to and from work are not covered under the Act because those injuries do not meet the `arising out of and in the course of employment' requirement. See Hughes v. Decatur Gen. Hosp., 514 So.2d 935 (Ala.1987); Exchange Distrib. Co. v. Oslin, 229 Ala. 547, 158 So. 743 (1935); Tucker v. Die-Matic Tool Co., 652 So.2d 263 (Ala.Civ.App.1994); Walker v. White Agencies, Inc., 641 So.2d 795 (Ala.Civ. App.1993); Terry v. NTN-Bower Corp., 615 So.2d 629 (Ala.Civ.App.1992); Winn-Dixie Stores, Inc. v. Smallwood, 516 So.2d 716 (Ala.Civ.App.1987)."
Ex parte Shelby County Health Care Auth., 850 So.2d 332, 336 (Ala.2002). In Ex parte Shelby County Health Care Authority, the supreme court explained that only a few exceptions exist to the "going and coming" rule:
"Alabama courts have carved out only a few exceptions to this general rule:
"`Such exceptions include situations where the employer furnishes the employee transportation or reimburses him for his travel expenses; where the accident occurs on the employer's property or on public property that is tantamount to the employee's ingress to and egress from the employer's property; or where the employee is injured crossing a public street between the main premises of the employer and the parking lot owned by the employer.'
"Terry v. NTN-Bower Corp., 615 So.2d [629] at 631 [(Ala.Civ.App.1992)] (citations omitted). See also Meeks v. Thompson Tractor Co., 686 So.2d 1213, 1216 (Ala.Civ.App.1996). An additional exception to the general rule arises when an employee, during his travel to and from work, is engaged in some duty for his employer that is in furtherance of the employer's business. See Tucker v. Die-Matic Tool Co., 652 So.2d [263] at 265 [(Ala.Civ.App.1994)]."
Ex parte Shelby County Health Care Auth., 850 So.2d at 336 (emphasis added). This last emphasized exception is commonly *371 referred to as the "dual purpose" or "dual capacity" exception. See Tucker v. Die-Matic Tool Co., 652 So.2d 263, 265 (Ala.Civ.App.1994).
The doctor first argues that he was "on the job" while traveling to work during his normal commute on February 7, 2000, because, he claims, he was engaged in performing job duties during the commute. The doctor points to the following facts in support of this argument: the clinic required him to take patient calls 24 hours a day, which included the period of time he was traveling to and from work; the clinic paid for the cost of his cellular telephone; the doctor actually used his cellular telephone to respond to a patient's call during his commute on February 7, 2000; and that call ended within a short time frame before the accident occurred.
However, the doctor concedes in his appellate brief that being on call is not the same as being on duty. See Ex parte Blackmon, 289 Ala. 635, 270 So.2d 108 (1972) (discussed later in this opinion addressing the doctor's "responding to a call" argument). Further, even if we were to accept that the doctor was actually performing a job duty "in the course of his employment" while he was engaging in the telephone conversation with the patient, it is undisputed that that call was completed before the accident occurred. The doctor did not present any evidence to establish that the use of his cellular telephone was causally related to the accident. Ex parte Trinity Indus., Inc., 680 So.2d 262, 266 (Ala.1996).
Next, the doctor argues that the fact that he had completed the cellular-telephone conversation with the patient before the accident occurred is irrelevant because, he asserts, by engaging in the cellular-telephone conversation with the patient and by further agreeing to meet the patient at the hospital or clinic, his otherwise normal commute was converted into a "dual purpose" trip.
This court has previously addressed the "dual purpose" exception in a number of cases. The general principle of law enunciated in those cases is succinctly stated in Tucker v. Die-Matic Tool, supra, as follows:
"Another exception to the general rule [that injuries sustained in accidents that occur while an employee is traveling to and from work are not covered under the Act] occurs when `an employee during his travel to and from work is engaged in some duty for his employer which is in furtherance of the employer's business.' Partin v. Alabama Power Co., 615 So.2d 616, 617 (Ala.Civ.App. 1992) (quoting Winn-Dixie Stores, Inc. v. Smallwood, 516 So.2d 716, 718 (Ala. Civ.App.1987)). This exception, also known as the `dual capacity' or `dual purpose' exception, applies whenever an employee's travel benefits both the employee and the employer, `"if the trip involves performance of a service for the employer which would have necessitated a trip by someone if the employee had been unable to perform that service in connection with his personal journey."' Winn-Dixie Stores, Inc. v. Smallwood, 516 So.2d 716, 718 (Ala.Civ.App.1987) (quoting Eddie Wallace's Garage v. Arreaga, 406 So.2d 405, 406 (Ala.Civ.App. 1981))."
Tucker v. Die-Matic Tool Co., 652 So.2d at 265.
In the present case, however, there is no evidence indicating that another doctor would have had to have made a special trip to the hospital or clinic on February 7, 2000, if the doctor had been unable to meet with the patient. Thus, the "dual purpose" exception, as enunciated above, did not convert the doctor's commute into a "dual purpose" trip.
*372 Lastly, the doctor argues that he was "responding to a call" and, therefore, that he was "on duty." In Ex parte Blackmon, supra, our supreme court stated:
"There is a difference between being on duty, and being on call. Even though an employee is subject to call, he is not on duty unless it be shown that he has been called and is responding to a duty to his employer in setting out on his trip to the site of his employment."
289 Ala. at 640, 270 So.2d at 112. In the present case, however, the doctor did not respond to a duty to his employer in setting out on his trip; he was traveling to work as he did on normal occasions. Thus, he was not "responding to a call" within the meaning of Ex parte Blackmon, supra.
Essentially, the doctor is asking this court to expand the "dual purpose" exception to encompass the facts of this case. However, the injuries at issue in this case did not occur "in the course of" the doctor's employment merely because the doctor, while "on call," engaged in and concluded an employment-related telephone conversation with a patient during his normal commute to work. We find no binding precedent requiring us to expand the exception, and we decline to make such a holding today. In so holding, we note that there is no evidence indicating that, in agreeing to meet the patient at the hospital or clinic, the doctor deviated from, or altered, his normal commute from home to work in any manner. There is no evidence indicating that the doctor altered his route or that the patient's call necessitated his arrival in an expeditious manner. As previously stated, there is no evidence indicating that another doctor would have had to have made a special trip to the hospital or clinic on February 7, 2000, if the doctor had been unable to meet with the patient. Had it become unnecessary for the doctor to meet with the patient at the hospital or clinic before the doctor arrived on February 7, 2000, the doctor would have continued traveling to work that day anyway. This case falls within the general rule "that accidents which occur while the employee is traveling to and from work are not considered `arising out of and in the course of' his employment." Winn-Dixie Stores, Inc. v. Smallwood, 516 So.2d 716, 717 (Ala.Civ.App.1987). Accordingly, the judgment of the trial court is due to be affirmed.
AFFIRMED.
PITTMAN and BRYAN, JJ., concur.
MURDOCK, J., concurs specially, with writing.
CRAWLEY, P.J., dissents, with writing.
MURDOCK, Judge, concurring specially.
The "dual purpose" exception to the "going-and-coming rule" was developed before the advent of cellular telephones. To apply the Workers' Compensation Act to any routine trip to or from work, merely because sometime during that trip the employee receives a cellular telephone call in which the caller seeks to make or confirm a work-related meeting or appointment with the employee during the ensuing business day, would expand the dual-purpose exception in a manner that would make it qualitatively different than was originally intended.
The quoted passages from Professor Larson and Alabama commentator Terry Moore that are set out in the dissenting opinion are not applicable. The "proper circumstances" that would convert an otherwise personal trip into a business trip covered by the Workers' Compensation Act are not present in this case. After receiving the telephone call from his patient, Dr. McClelland continued, without *373 any special errands or stops along the way, on his customary route to work. The only effect of the call was to alter slightly the activities in which the doctor would engage after arriving at work.
The dissent also argues that the majority opinion errs when it notes that, after talking to his patient on the telephone, Dr. McClelland did not alter his "normal commute from home to work in any manner." 933 So.2d at 374. The dissent argues that this "is not a basis for failing to apply the dual-purpose exception to the going-and-coming rule," because, according to the dissent, "it is the purpose for the trip, not the route of the trip, that is determinative." 933 So.2d at 374 (Crawley, P.J., dissenting). My point is that the "purpose" of Dr. McClelland's trip was not altered. The purpose of his travel on the morning in question, from the beginning thereof through its conclusion, was simply to travel from his home along his customary route in order to arrive at his normal place of work at the normal time. (Seeing a patient within the course of his workday was certainly within Dr. McClelland's normal scope of duties upon arriving at work on a typical day.)
Consistent with the foregoing, but in contrast to the dissenting opinion, I conclude that Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181 (1929), is a case that supports the main opinion. Adapting the reasoning in Marks' Dependents to the present case, "[t]he [cellular telephone call] did not bring [Dr. McClelland] on the journey [to work] or expose him to its risks. If that is so, it is not `out of the [cellular telephone call]' that the injuries arose." 251 N.Y. at 92, 167 N.E. at 182. Not unlike the situation in Marks' Dependents with respect to the employer's request in that case that the employee engage in a work-related activity upon completing his journey, the cellular telephone call received by Dr. McClelland would have merely resulted in his engaging in certain work-related activities at the conclusion of a trip that he was in the process of making anyway and that was not covered by the Workers' Compensation Act.
The fundamental test in a workers' compensation case is whether the "`the rational mind [is] able to trace the resulting injury to a proximate cause set in motion by the employment and not by some other agency.'" Barrett v. Lee Brass Co., 883 So.2d 227, 229 (Ala.Civ.App.2003) (quoting Moesch v. Baldwin County Elec. Membership Corp., 479 So.2d 1271, 1272 (Ala.Civ. App.1985)). In this case, the rational mind cannot trace Dr. McClelland's injury to the fact that he received the cellular telephone call in question. The rational mind can only trace his injury to the fact that he was simply traveling by automobile in his customary manner on his way to work. This "travel" falls within the "going-and-coming rule."
CRAWLEY, Presiding Judge, dissenting.
I believe the majority's analysis of this case represents a cramped, parsimonious, and formulaic interpretation of the "dual purpose" exception to the "going and coming" rule.
"Every case involving [whether an employee's injury arises out of and in the course of the employee's employment] should be decided upon its own particular facts and circumstances and not by reference to some formula."
Massey v. United States Steel Corp., 264 Ala. 227, 230, 86 So.2d 375, 378 (1955). See also Bell v. General Am. Transp. Corp. 52 Ala.App. 123, 127, 290 So.2d 184, 186-87 (Civ.1973) (stating that "`[w]hether an accident arose out of and in the course of employment must depend upon the facts *374 and circumstances of each case. No exact formula can be set forth which will automatically solve every case . . . .'") (quoting Union Camp Corp. v. Blackmon, 49 Ala. App. 229, 232, 270 So.2d 104, 106, aff'd, 289 Ala. 635, 270 So.2d 108 (1972)).
Judge Murdock's concurring opinion accurately observes that the dual-purpose exception to the going-and-coming rule was developed before the advent of cellular telephones. However, courts have routinely applied the exception in cases involving other previously unheard-of advances in communication technology, such as radio-dispatched police vehicles, see, e.g., Montgomery County v. Wade, 345 Md. 1, 7, 690 A.2d 990, 992 (1997), and Botke v. Chippewa County, 210 Mich.App. 66, 533 N.W.2d 7 (1995); and walkie-talkies and pagers, see, e.g., Mayes v. Goodyear Tire & Rubber Co., 144 S.W.3d 50 (Tex.App. 2004). The strength and genius of the common law lies in its ability to adapt to the needs of the society it governs.
Dr. McClelland argues that what began as a purely personal commute to work was converted, en route, into a dual-purpose trip. He maintains that, after he talked with a patient on his cellular telephone and arranged to meet the patient at the hospital or clinic, he was responding to a call and was thereby "on duty" for his employer. See Tucker v. Die-Matic Tool Co., 652 So.2d 263, 265 (Ala.Civ.App.1994)(stating that an "exception to the [going-and-coming rule of noncompensability] occurs when an `employee during his travel to and from work is engaged in some duty for his employer which is in furtherance of the employer's business'") (quoting Partin v. Alabama Power Co., 615 So.2d 616, 617 (Ala.Civ.App.1992)).
Citing Union Camp Corp. v. Blackmon, supra, the majority rejects this theory of the case because, it says, the nature of a trip is determined at the beginning of the journeyupon the employee's "setting out"thus implying that a journey cannot be transformed into a dual-purpose trip by anything that occurs en route. Because Blackmon did not present the issue of whether a trip was "converted" or "transformed" by an event en route, the "setting out" language in Blackmon is neither authority for the majority's conclusion nor a limitation on all dual-purpose journeys. Moreover, both Professor Larson and Alabama commentator Terry Moore unequivocally state that a journey that begins with one purpose may be converted into a dual-purpose journey by an event that occurs en route.
"The dual-purpose nature of the trip need not have existed from the moment the trip was first started. The employee may have embarked on what was intended to be a purely personal vacation trip. If in the course of that trip a business purpose arises and is added by the employer, the trip from that point on will be a business trip if it would have been a business trip up to that point had the same business purpose existed from the start."
1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 16.05 at 16-9 (2005). See also 1 Terry A. Moore, Alabama Workers' Compensation § 11:28 at 390 (2004)(stating that "[t]he trip may be transformed into an employment-related activity given the proper circumstances").
The majority also determines that the journey in this case cannot qualify as a dual-purpose trip because, after Dr. McClelland talked to his patient and arranged to meet the patient at the hospital or clinic, he did not alter his normal commute from home to work in any manner. This is not a basis for failing to apply the dual-purpose exception to the going-and-coming rule. As the name of the exception *375 indicates, it is the purpose for the trip, not the route of the trip, that is determinative. Both the majority opinion and Judge Murdock's concurring opinion fail to recognize the concurrent purposes for Dr. McClelland's trip, namely: a routine drive to work and a drive in response to a specific patient's call. Had the doctor decided to cancel the former purpose, he would still have embarked on the latter purpose.
The majority holds that the dual-purpose exception does not apply in this case because "there is no evidence that another doctor would have had to have made a special trip to the hospital or clinic on February 7, 2000, if [Dr. McClelland] had been unable to meet with the patient." 933 So.2d at 371 (emphasis added). For this holding, the majority cites the decision in Tucker v. Die-Matic Tool Co., supra, which cites, in turn, Winn-Dixie Stores, Inc. v. Smallwood, 516 So.2d 716 (Ala.Civ. App.1987), and Eddie Wallace's Garage v. Arreaga, 406 So.2d 405 (Ala.Civ.App.1981). Additional Alabama cases relying on the same rule of law are Southern Cotton Oil Co. v. Bruce, 249 Ala. 675, 32 So.2d 666 (1947), and Patterson v. Whitten, 57 Ala. App. 297, 328 So.2d 301 (Ala.Civ.App. 1976). All of those Alabama decisions are based on the seminal case of Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181 (1929), authored by New York Court of Appeals Chief Judge (later United States Supreme Court Justice) Benjamin Cardozo.
In Marks' Dependents, the employee Marks was a plumber's helper who lived and worked in Clifton Springs, New York. When Marks's wife went to visit relatives in Shortsville, New York, Marks arranged to pick her up at the end of his day's work. Learning of Marks's trip to Shortsville, the employer asked Marks to take his tools and repair some faucets at a residence in Shortsville. Marks agreed and drove his personal vehicle in the direction of Shortsville. On the way, he was killed in an automobile accident.
Concluding that Marks's death was not compensable, the New York Court of Appeals reversed an administrative order awarding workmen's compensation benefits. The court explained:
"[Marks] was not making the journey to Shortsville at the request of his employer or for the purpose of doing his employer's work. He was making it in fulfillment of a promise to call for his wife at the end of the day, and bring her home in the family car. If word had come to him before starting that the defective faucets were in order, he would have made the journey just the same. If word had come, on the other hand, that his wife had already returned, he would not have made the trip at all. The employment did not bring him on the journey or expose him to its risks. If that is so, it is not `out of the employment' that the injuries arose."
Marks' Dependents v. Gray, 251 N.Y. at 92, 167 N.E. at 182.
It is significant, for purposes of the case now before this court, that Chief Judge Cardozo pointed out that "a different question would arise if Marks, after making the trip to Shortsville, had met with some accident while repairing the defective faucets. . . . The collision occurred while he was still upon the highway, a mile or less from home." 251 N.Y. at 93, 167 N.E. at 182-83. In other words, if the employee had met with an accident during the time he was on duty for his employer, the event would have been outside the rule of noncompensability announced in the case. In the case now before this court, Dr. McClelland had an accident after he talked with a patient on his cellular telephone and arranged to meet the patient at the hospital or clinicthat is, when he was responding *376 to a call and was "on duty" for his employer.
Marks' Dependents is not authority for the majority's holding that the dual-purpose exception does not apply in this case without "evidence that another doctor would have had to have made a special trip to the hospital or clinic on February 7, 2000, if [Dr. McClelland] had been unable to meet with the patient." 933 So.2d at 371 (emphasis added). The oft-quoted and widely accepted test from Marks' Dependents, upon which the Alabama cases cited by the majority rely, is:
"We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled. We cannot draw that inference from the record now before us. On the contrary, the evidence is that a special trip would have been refused since the pay would be inadequate. The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. . . . If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk."
Marks' Dependents v. Gray, 251 N.Y. at 93, 167 N.E. at 183 (emphasis added). The rule espoused in Marks' Dependents would require only a permissible inference that, if Dr. McClelland had not been going to work anyway that day, he would still have gone to the hospital or the clinic to meet the patient in response to a call. That inference is not only permissible, it is inescapable. Dr. McClelland testified that the medical standard of care, as well as his contract of employment, required him to respond to the patient.
The "someone, sometime" rule referred to in the majority opinioni.e., that application of the dual-purpose exception would require "evidence that another doctor would have had to have made a special trip to the hospital or clinic on February 7, 2000, if [Dr. McClelland] had been unable to meet with the patient"is inapplicable here. That rule represents Larson's gloss on Judge Cardozo's discussion in Marks' Dependents. Professor Larson explains:
"[Judge Cardozo] said it was sufficient if the business motive was a concurrent cause of the trip. He then defined `concurrent cause' by saying that it meant a cause which would have occasioned the making of the trip even if the private mission had been canceled. One detail must be stressed to make this rule complete: it is not necessary, under this formula, that, on failure of the personal motive, the business trip would have been taken by this particular employee at this particular time. It is enough that someone sometime would have had to take the trip to carry out the business mission. Perhaps another employee would have done it; perhaps another time would have been chosen; but if a special trip would have had to be made for this purpose, and if the employer got this necessary item of travel accomplished by combining it with this employee's personal trip, it is accurate to say that it was a concurrent cause of the trip, rather than an incidental appendage or afterthought."
1 Larson's Workers' Compensation Law § 16.03 at XX-X-XX-X (footnotes omitted). Thus, although it was not necessary to the *377 application of the dual-purpose exception that Dr. McClelland carry out the business purpose of meeting a patient in response to a call, it was sufficient.
I would reverse the summary judgment in favor of the employer and render a judgment for Dr. McClelland. Therefore, I dissent.
NOTES
[1] This case was originally assigned to another judge on this court. It was reassigned to Judge Thompson on September 19, 2005.
[2] The doctor also sued State Farm Mutual Automobile Insurance Company seeking uninsured-motorist benefits. The clinic filed a motion to sever the doctor's workers' compensation claim from his uninsured-motorist claim. On April 18, 2004, the trial court entered a judgment in favor of the doctor on his uninsured-motorist claim and certified that judgment as "final" pursuant to Rule 54(b), Ala. R. Civ. P.