MOORE, Judge,
concurring in part and concurring in the result in part.
I. concur with that portion of the main opinion reversing the Madison • Circuit Court’s judgment insofar as it awarded Joseph Allen (“the dependent”) excessive burial expenses. I also concur with much of the discussion regarding compensability—i.e., whether the accident that caused the death of Suzanne Sharp, Allen (“the employee”) arose out of and in the course of her employment—although I do not entirely agree with the relevancy of some of the evidence cited in the main opinion in support of the court’s conclusión as to that issue. I concur in the result as, to the affirmance of that part of the judgment denying Hospice Family Care (“the employer”) any credit for life-insurance and accidental-death benefits paid tó the dependent.

The Liability Issue

I agree that the Madison Circuit Court (“the trial court”) did not-.err in, awarding death benefits to the dependent under the Alabama Workers’ Compensation Act, (“the Act”), Ala.Code 1975, § 25-5-1 et- seq., as a result of the death of the employee. The *1232 primary purpose of the Act is to place part of the burden of injuries and deaths from occupational hazards onto the employer. Pow v. Southern Constr. Co., 235 Ala. 580, 584, 180 So. 288, 291 (1938). When an employer, as part of the employment relationship and for mutual economic benefit, requires an employee to continually or frequently travel by automobile in furtherance of his or her job duties, thereby making the risk of an automobile accident an occupational hazard, the general philosophy behind the Act demands that the employer shall be liable for an injury, disability, or death of the employee resulting from an automobile accident occurring as a result of those circumstances. See Union Serv. Ins. Co. v. Donaldson, 254 Ala. 204, 48 So.2d 3 (1950). The specific provisions of the Act should be liberally construed to accomplish, not prevent, that benevolent purpose. Ala. Acts 1992, Act No. 92-537, § 1.
The employer in this case maintains that the trial court erred because, it says, the automobile accident did not arise out of and in the course of the employee’s employment -within the meaning of Ala.Code 1975, § 25-5-51, which provides, in pertinent part:
“If an employer is subject to this article, compensation, according to the schedules hereinafter contained, shall be paid by the employer, or those conducting the business during bankruptcy or insolvency, in every case of personal injury or death of his or her employee caused by an accident arising out of and in the course of his or her employment, without regard to any question of negligence.”
An accident “arises out of the employment” when the employment conditions materially increase the risk of the occurrence of that accident, Ex parte Trinity Indus., Inc., 680 So.2d 262 (Ala.1996), such as when the employment requirements multiply the dangers of an automobile accident by continually or frequently placing an employee on the public highways. Donaldson, supra. An employee is exposed to a greater chance of being involved in an automobile accident when using the public roadways more often than the average motorist. Id. In this case, the automobile accident arose out of the employment requirement that the employee regularly travel the roadways in and around Madison County to fulfill her job duties. By exposing the employee to an increased risk of becoming a roadway fatality beyond the normal risk undertaken by persons in their ordinary lives, the travel requirements of the job legally caused the death of the employee. Ex parte Trinity Indus., supra.
Section 25-5-1(8) expressly provides that an accident occurs “in the course of the employment” when the employee is
“engaged in or about the premises where then1 services are being performed or where their service requires their presence as a part of service at the time of the accident and during the hours of service as workers.”
As liberally construed, “ ‘[a]n injury to an employee arises in the course of his [or her] employment when it occurs within the period of his [or her] employment, at a place where he [or she] may reasonably be, and while he [or she] is reasonably fulfilling the duties of his [or her] employ-inent or engaged in doing something incident to it.’ ” Ex parte Shelby Cty. Health Care Auth., 850 So.2d 332, 336 (Ala.2002) (quoting Anderson v. Custom Caterers, Inc., 279 Ala. 360, 361, 185 So.2d 383, 384-85 (1966), citing in turn Southern Cotton Oil Co. v. Bruce, 249 Ala. 675, 32 So.2d 666 (1947)). “[T]his test broadens the course of employment to include practically any time, place, or activity in which an employ *1233 ee may confront an occupational hazard, excluding only those cases where the accident arises while the employee is engaged in a purely personal activity.” 1 Terry A. Moore, Alabama Workers’ Compensation § 11:3 (2d ed.2018).
The employer argues that the “going and coming rule” bars the dependent’s claim. That rule arises primarily from the statutory requirement in § 25-5-1(8) that, for an accident to have occurred “in the course of the employment,” an employee must be on the employment premises, engaged in a service to his or her employer, at the time of the accident. In the usual case, the employment premises are well defined and the act of commuting to and from those premises cannot be characterized as a benefit to the employer, so, as a general rule, an accident that occurs while an employee is going to or coming from his or her employment site does not arise in the course of the employee’s employment. See McClelland v. Simon-Williamson Clinic, P.C., 933 So.2d 367 (Ala.Civ.App.2005). The rationale supporting the going and coming rule evaporates, however, when an employee does not work at a fixed job site but regularly travels to varying destinations in service of the employer. See, e.g., Cummings Trucking Co. v. Dean, 628 So.2d 902 (Ala.Civ.App.1993). When an employee’s employment duties necessitate frequent travel, the travel itself constitutes part of the employment service, such that a traveling employee remains in the course of the employment so long as he or she is engaged in travel incidental to the discharge of the employment objec-fives and not in pursuit of an exclusively personal errand. See Crofford v. J.B. Hunt Transp., Inc., 692 So.2d 837 (Ala.Civ.App.1996). In that sense, while in the midst of work-related travel, a traveling employee is neither “going to” nor “coming from” the employment premises but, actually, is in the sphere of the employment throughout the journey so that the general rule does not apply. See Craig v. Val Energy, Inc., 47 Kan.App.2d 164, 274 P.3d 650 (2012).
In this case, the employer retained the employee to perform the integral function of its business—providing hospice care to terminally ill patients, 98% to 99% of whom receive such care in their own homes. To accomplish the core business of the employer, the employee was expected to use her own automobile to travel to and from her patients’ homes on a daily basis. Frequent automobile travel to and from her home unquestionably constituted an essential part of the job duties of the employee from which the employer derived its primary economic benefit. The employer premised its entire business model on such travel. The employer could have acknowledged the inherent work-related nature of the travel to and from her home by reimbursing the employee for the mileage she incurred during that travel, but the mere fact that it drafted its company policy generally to exclude such reimbursement does not transform the travel to and from the home of the employee into a purely personal errand. See Olsten-Kimberly Quality Care v. Parr, 965 S.W.2d 155, 156 (Ky.1998).[4]
*1234 Under the circumstances, as a matter of law, the employee, as a traveling employee, remained on duty and within the employment -premises during her travel to and from her home. At trial, and on appeal, the parties narrowly focused on whether the employee’s accident arose in the course of the employment because the employee had yet to complete her paperwork and telephone-call duties, which should not be considered dispositive. As the Kentucky Supreme Court aptly stated:
. “Furthermore, we- agree with the Court of Appeals that the evidence regarding where. and when claimant was suppose[d] to complete the required paperwork is a collateral matter and is irrelevant to the question of whether claimant was performing a service for the employer, by traveling to and from the patient’s home, on the date in question. Namely, the service to the employer, as discussed above, was not that claimant was allegedly returning home to complete the required paperwork, but that the travel, in and of itself, served the interests of the employer. Therefore, we will give no further attention to this issue as it is not outcome determinative.”
Olsten-Kiwherly Quality Care, 965 S.W.2d at 158.
The employee was not engaged in the pursuit of a personal errand at the time of the accident so as to be outside the course of the employment. The evidence shows that, after departing from her last patient visit, the employee stopped at a pharmacy on her way home to obtain a prescription for her personal use. The employee had left the pharmacy, had returned to the roadway en route to her home, and had been traveling for some period when the automobile accident happened. Notably, the accident occurred at 3:45 p.m. within the employee’s regularly scheduled workday of 8:00- a.m. to 4:30 p.m. Thus, at the time of the accident, the employee had completed her personal errand, which, both in time and distance, constituted but an insubstantial deviation from her route, and had resumed her work-related travel back to her home so as to be back within the course of the employment. See Meeks v. Thompson Tractor Co., 686 So.2d 1213 (Ala.Civ.App.1996) (substantial evidence, indicating that worker had stopped at convenience store along business route .but had resumed business after completing purchase when accident that caused the death of worker occurred, supported determination that accident arose out of and in the course of the employment so as to defeat a motion for a summary judgment). The employee was not pursuing a purely personal errand once she returned to her route home, and, thus, the automobile accident arose in the course of her employment.
The occupational hazard that claimed the life of the employee materialized while she was engaged in a vital employment activity during her work hours at a place her employer expected she would be. The employee had not completely abandoned her employment for a purely personal mission. The trial court correctly determined that the death of the employee was caused by an accident in the course of her employment with the employer. Because the automobile accident arose out of and in the course of the employee’s employment, the trial court correctly determined the liability of the employer for death benefits under the Act.

The Credit Issue

The trial court also did not err in refusing to credit $134,617.50 in life-insurance and accidental-death benefits paid to the dependent against the employer’s workers’ compensation liability. Those proceeds came from policies funded by the employer *1235 and insuring the life of the employee, which the employer maintains should reduce its liability for death benefits. However, the legislature has not enacted any credit or setoff provision for fringe benefits payable to a dependent due to the death of an employee.
Section 26—5—8(a), Ala.Code 1975, provides:
“Option to insure risks. An employer subject to this chapter [i.e,, the Act] may secure the payment of compensation under this chapter by insuring and keeping insured his or her liability in some insurance corporation, association, organization, insurance association, corporation, or association formed of employers and workers or formed by a group of employers to insure the risks under this chapter, operating by mutual assessment or other plans or otherwise. Notwithstanding the foregoing, the insurance association, organization, or corporation shall have first had its contract and plan of business approved in writing by the Commissioner of the Department of Insurance of Alabama and have been authorized by the Department of Insurance to transact the business of workers’ compensation insurance in this state and under the plan. Notwithstanding any other provision of the law to the contrary, the obligations of employers under law for workers’ compensation benefits for injury of employees may be insured by any combination of life, disability, accident, health, or other insurance provided that the coverages insure without limitation or exclusion the workers’ compensation benefits of this state.”
Section 25-5-8(a) grants an employer the option of either insuring its workers’ compensation risks by purchasing and maintaining a policy of workers’ compensation insurance or by purchasing and maintaining a combination of life, disability, accident, health, and other insurance insuring workers’ compensation benefits. The employer does not cite any evidence in the record to substantiate that the employer had elected the. second option, such that the life-insurance and accidental-death benefits should be considered as advance payments from its workers’ compensation insurance' plan rather than as supplemental fringe benefits, as the evidence suggests they were treated. Section 25-5-8(a), which regulates only the manner in which workers’ compensation risk is secured, does not otherwise provide that an employer should receive credit against its liability for death benefits in the amount of any life-insurance and accidental-death benefits paid to a dependent as the employer implies.
Section 25-5-57(c)(l), Ala.Code 1975, provides:
“The employer may reduce or accept an assignment from an employee of the amount of benefits paid pursuant to a disability plan, retirement plan, or other plan providing for sick pay by the amount of compensation paid, if and only if the employer provided the benefits or paid for the plan or plans providing the benefits deducted.”
Section 25-5-57(e)(l) provides an employer a credit or setoff in the' amount of any employer-funded sick-pay benefits paid to an employee. See Ex parte City of Birmingham, 988 So.2d 1035 (Ala.2008). Life-insurance and accidental-death benefits are not “sick pay,” and, even if those benefits could be considered sick pay, the statutory setoff applies only to compensation owed to an employee, not to death benefits owed to a dependent.
Section 25-5-57(c)(3), Ala.Code 1975, provides, in pertinent part:
“If an employer continues the salary of an injured employee during the benefit period or pays similar compensation during the benefit period, the employer *1236 shall be allowed a setoff in weeks against the compensation owed under this article [i.e., Article 3 of the Act].”
The legislature enacted § 25-5-57(c)(3) in order to prevent a claimant from recovering workers’ compensation benefits during periods when the claimant is not actually losing pay. See 1 Terry A. Moore, Alabama Workers’ Compensation § 16:32 (2d ed.2013). As an exception to the general scheme set out in § 25-5-67, because it reduces the compensation otherwise payable, § 25-5-57(c)(3) should be construed strictly. See generally Mobile Liners, Inc. v. McConnell, 220 Ala. 562, 126 So. 626 (1930).
Section 25-5-57(c)(3) does not specifically give an employer credit for the amount of life-insurance or accidental-death benefits paid, which benefits are not considered “salary” or “similar compensation” in the ordinary meaning of those terms. Moreover, the statute grants a credit for the “weeks” in which the employer continues the salary of the employee or pays similar compensation. In other words, for each week the employer continues the salary of an employee or pays similar compensation, the statute relieves the employer from paying workers’ compensation benefits for that week. In that sense, the legislature intended the credit to apply when an employer continues paying an employee’s salary or a salary replacement in regular intervals so as not to interrupt the flow of supportive income. The legislature did not intend that the dollar amount of lump-sum payments of life-insurance or accidental-death benefits would be credited against death benefits.
In its judgment, the trial court denied the credit on the basis that the employer did not prove that it intended the life-insurance and accidental-death benefits to be paid in lieu of workers’ compensation benefits. The trial court noted that the policies did not require the employee to name a dependent as a beneficiary. In fact, some of the insurance proceeds were paid to the adult daughter of the employee who was not an eligible dependent entitled to any death benefits under the Act. From that evidence, the trial court reasoned that the employer did not treat its insurance policies as substitutes for workers’ compensation benefits. This court is not bound by the reasoning of the trial court, but “will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court.” Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003). Because the employer was not entitled to a credit for life-insurance and accidental-death benefits under § 25-5-8 or § 25-5-57(c) as explained above, I concur' in the result of the main opinion holding that the judgment denying that credit is due to be affirmed.

. The company policy regarding mileage reimbursement could have been relevant to prove that this case does not fall within the traveling-expenses exception to the going and coming rule. See Sun Papers, Inc. v. Jerrell, 411 So.2d 790 (Ala.Civ.App.1981). However, as explained supra, the going and coming rule does not even apply under the circumstances of this case. Hence, the fact that the employer did not reimburse the employee for mileage while traveling from her last patient visit to her home and that other employees therefore subjectively considered such travel to be outside the course of the employment is immaterial.